No. 26-5050

# IN THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

FRITZ EMMANUEL LESLY MIOT, *et al.*,
*Appellees*,

v.

DONALD J. TRUMP, *et al.*,
*Appellants*.

On Appeal from the U.S. District Court
for the District of Columbia
No. 1:25-cv-2471 (Reyes, J.)

## REPLY IN SUPPORT OF EMERGENCY MOTION FOR A STAY PENDING APPEAL

BRETT A. SHUMATE
*Assistant Attorney General*

YAAKOV M. ROTH
*Principal Deputy Assistant Attorney General*

DREW C. ENSIGN
*Deputy Assistant Attorney General*

SARAH WELCH
*Counsel to the Assistant Attorney General*
*905 Pennsylvania Ave. NW*
*Washington, D.C. 20530*
*(202) 514-3180*

JEANINE FERRIS PIRRO
*United States Attorney*

JOHNNY H. WALKER, III
*Assistant United States Attorney*

DHRUMAN Y. SAMPAT
*Assistant United States Attorney*

## TABLE OF CONTENTS

INTRODUCTION ................................................................................. 1

ARGUMENT ........................................................................................ 2

    I.    The Government Is Likely To Succeed on the Merits. ........... 2

        A.    Congress barred judicial review of the Secretary's decision to terminate Haiti's TPS designation. ............. 3

        B.    Plaintiffs' APA challenges fail. ....................................... 7

        C.    Plaintiffs' equal-protection claim fails. ......................... 9

    II.   The Equitable Factors Overwhelmingly Favor a Stay. ........ 11

CONCLUSION .................................................................................. 14

CERTIFICATE OF COMPLIANCE ....................................................... I

CERTIFICATE OF SERVICE ............................................................... II

## INTRODUCTION

Plaintiffs spend less than four pages of their opposition defending the underlying merits of their claims. Instead, they focus principally on the equitable factors bearing on the Government's stay motion. Yet they never grapple with the Supreme Court's plainly contrary evaluation of those non-merits factors in its *two* stay orders allowing TPS terminations to take effect. Those orders necessarily reflect the Court's conclusion that the Government is irreparably harmed by postponing TPS terminations and that the balance of harms and the public interest favor immediately effectuating those terminations. That conclusion governs this materially identical case. *Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025). Indeed, plaintiffs in those cases raised the same equitable arguments as Plaintiffs here.

When Plaintiffs finally turn to the merits, they scarcely defend the district court's reasoning. They offer no account of § 1254a(b)(5)(A)'s text that could square Congress's express prohibition on "judicial review of any determination … with respect to the … termination" of a TPS designation with the district court's judicial review of a termination of a TPS designation. Instead, they rely on a Supreme Court decision that

1

evaluated a different statute and that cuts against them regardless. And they invoke an "unbroken consensus" among other district courts—which is both inaccurate on its own terms and also ignores contrary appellate stay orders. Beyond the review bar, Plaintiffs abandon much of the district court's reasoning on the underlying APA and equal-protection claims and offer only the barest lip-service to the rulings they do defend.

In short, the Government is highly likely to prevail on appeal, either because of the judicial-review bar or the weakness of the Plaintiffs' claims, and the equitable factors favor the Government. The Court should therefore grant a stay pending appeal.[1]

## ARGUMENT

## I.     The Government Is Likely To Succeed on the Merits.

The judicial review bar in 8 U.S.C. § 1254a(b)(5)(A) forecloses each of Plaintiffs' claims, all of which challenge and seek "judicial review" of a single "termination" of a TPS designation. *Id.* Plaintiffs' claims would also fail on the underlying merits even if they were properly before the district court.

---

[1] The district court has since denied the Government's motion for a stay pending appeal.

2

### A. Congress barred judicial review of the Secretary's decision to terminate Haiti's TPS designation.

Plaintiffs challenge precisely one agency action: the decision to terminate Haiti's TPS designation. That decision is plainly a "determination of the [Secretary] with respect to the … termination … of a designation[] of a foreign state" for TPS, so "[t]here is no judicial review" of that decision. 8 U.S.C. § 1254a(b)(5)(A); *see* Mot. 10-17.

Because of that express bar, the presumption of judicial review (Opp. 14) has no relevance here. That presumption "may be overcome whenever the congressional intent to preclude review is fairly discernible in the statutory scheme," including by mere implication. *AFGE v. FLRA*, 99 F.4th 585, 589-95 (D.C. Cir. 2024). When Congress directly negates the presumption of judicial review in as many words, providing that "*[t]here is no judicial review*" of "any" determination related to a TPS termination, that readily suffices to overcome the presumption. 8 U.S.C. § 1254a(b)(5)(A) (emphasis added).

Plaintiffs say their claims fall outside § 1254a(b)(5)(A) because they are ostensibly "procedural" challenges focused on "the process by which the Secretary made" the determination, not "substantive" objections to the termination. Opp. 14-17. But they make no attempt to square that

3

dichotomy with the rule established in binding circuit precedent that "if a no-review provision shields particular types of administrative action, a court may not inquire whether a challenged agency decision is arbitrary, capricious, or procedurally defective." *Amgen Inc. v. Smith*, 357 F.3d 103, 113 (D.C. Cir. 2004); *see* Mot. 15-16.

As the Government has already explained, the Supreme Court's interpretation of a different statute and different claims in *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479 (1991), does not help Plaintiffs. Opp. 15-17. Even putting aside the differences between the two statutes, *McNary* opened the door only to claims that challenge a collateral agency action rather than a single decision. *See Reno v. Cath. Soc. Servs.*, 509 U.S. 43, 56 (1993) (interpreting *McNary* as permitting a challenge that could be reviewed "without referring to … the denial of any individual application"); *City of Rialto v. W. Coast Landing Corp.*, 581 F.3d 865, 876 (9th Cir. 2009) (*McNary*-style challenges "do not depend on the facts of any given individual agency action.").

Plaintiffs' claims are in no sense collateral. They identify no distinct agency policy or practice they are challenging—nor can they, because the APA provides for review only of final agency actions, and there is no

4

freestanding policy or practice amounting to an agency action they could challenge. *See Biden v. Texas*, 597 U.S. 785, 809 (2022) (rejecting attempt to "postulat[e] the existence of an agency decision wholly apart from any 'agency statement of general or particular applicability … designed to implement' that decision") (quoting 5 U.S.C. § 551(4)). And the relief that Plaintiffs seek—to set aside a specific termination—belies the suggestion that they are challenging some unnamed, unidentified collateral policy. *DCH Reg'l Med. Ctr. v. Azar*, 925 F.3d 503, 508 (D.C. Cir. 2019) (rejecting *McNary*-style challenge that sought "to attack the very [decisions] that the preclusion provision insulates from review"); *Ramos v. Wolf*, 975 F.3d 872, 892-93 (9th Cir. 2020) (§ 1254a barred claim that sought "direct relief from the challenged" TPS terminations "rather than collateral relief from an allegedly unlawful agency practice"), *vacated*, 59 F.4th 1010 (9th Cir. 2023). So, even if it applied here, *McNary* would not permit a challenge to a single determination, pressing claims that depend on that decision's administrative record, and seeking relief solely from that action. *See* Mot. 14-15.

Plaintiffs' only other response is to claim an "unbroken consensus" favoring their narrow reading of § 1254a(b)(5)(A). Opp. 15. They refer,

5

evidently, to a handful of district court decisions staying or setting aside TPS terminations. When appellate courts have considered those orders, however, they have nearly universally stayed them. *See Noem v. NTPSA*, 146 S. Ct. 23 (Venezuela); *Noem v. NTPSA*, 145 S. Ct. 2728 (2025) (Venezuela); *Noem v. NTPSA*, No. 26-199 (9th Cir. Feb. 9, 2026) (*NTPSA VII*) (finding that "the government has shown a likelihood of prevailing in its argument that the Secretary's action is unreviewable because it is a 'determination … with respect to the … termination … of a [TPS] designation.'"); *NTPSA v. Noem*, No. 25-4901 (9th Cir. Aug. 20, 2025) (staying postponement of terminations of Honduras, Nepal, and Nicaragua); *see also Casa, Inc. v. Noem*, No. 25-1792 (4th Cir. July 21, 2025) (allowing termination of TPS for Afghanistan and Cameroon to take effect).[2] And the Ninth Circuit previously rejected claims like Plaintiffs' in *Ramos*, 975 F.3d at 892-93.

---

[2] The only exception, for now, is the Second Circuit's order, entered on Tuesday evening, declining to allow the termination of TPS for Syria to take effect pending appeal. *Dahlia Doe v. Noem*, No. 25-2995 (2d Cir. Feb. 17, 2026). That decision splits with the Fourth and Ninth Circuits and flouts the Supreme Court's two stay decisions. *Supra* at 5-6.

6

This Court should not count district court noses; it should instead follow the text of the statute and the Supreme Court's guidance. By those measures, the Government is likely to prevail on appeal.

B.   **Plaintiffs' APA challenges fail.**

Even if Plaintiffs' APA claims were reviewable, they fail on the merits. Tellingly, Plaintiffs barely defend the district court's analysis. They do not say a word to defend the court's substantive rejection of the Secretary's national-interest assessment, the court's refusal to credit the Secretary's prediction of near-term improvements in conditions in Haiti, or the court's conclusory finding that the termination was unlawfully "pre-ordained." Instead, they defend on just three grounds.

*First*, they assert in a single sentence that the Secretary's country-conditions finding was "contrary to all evidence in the administrative record." Opp. 20. Of course, at absolute minimum, the review bar forbids that sort of substantive second-guessing of country-conditions findings. In all events, Plaintiffs mischaracterize the Secretary's finding, which was that "[c]ertain conditions in Haiti remain concerning" but do not prevent the safe return of Haiti's nationals because, among other things, "parts of the country are suitable to return to." 90 FR 54735. That finding

7

is readily supported by its articulated record basis, and Plaintiffs' contrary assertion rests solely on their differing interpretation of that evidence—a reweighing of the evidence that even ordinary APA principles preclude, *see Ind. Mun. Power Agency v. FERC*, 56 F.3d 247, 254 (D.C. Cir. 1995).

*Second*, on the Secretary's national-interest finding, Plaintiffs do not contest that it is independently dispositive (Opp. 20), or defend the district court's criticisms of that determination (Mot. 20-21); instead, they challenge it on grounds the district court did not adopt. Specifically, they invent two new substantive limitations on the national-interest analysis. Both impermissibly seek to add atextual requirements. *See Ming Dai v. Garland*, 593 U.S. 357, 358 (2021). And neither makes any sense: A statute is not "effectively repeal[ed]" (Opp. 21) by a permissible discretionary choice not to provide the benefit authorized by the statute, and restrictions on the availability of TPS for aliens who have committed certain crimes in no way implies that domestic public safety is irrelevant to the national interest. Nor would either limitation undermine the Secretary's finding here, which provided page after page of Haiti-specific reasoning and numerous considerations beyond its discussion of "direct

8

consequences for U.S. public safety." 90 FR 54735-38.

*Last*, Plaintiffs assert that the Secretary's consultation with the State Department was not "meaningful" (Opp. 20), but they offer no principled basis to distinguish sufficient from insufficient consultation. Contrary to the district court's recently clarified view (Opp. Ex. A at 31), the State Department had the opportunity to weigh in, and did so (*see* Op. 42). The statute requires nothing more, and it certainly does not permit district courts to judge the *adequacy* of the Secretary's consultations.

### C. Plaintiffs' equal-protection claim fails.

Plaintiffs' equal-protection claim does no better. The *Trump v. Hawaii* standard applies, and the Government would succeed even under the *Arlington Heights* standard that Plaintiffs invoke.

Start with the proper standard. The court should apply the *Trump v. Hawaii* standard to this decision regarding "the admission and exclusion of foreign nationals," which involves "relations with foreign powers," "classifications defined in the light of changing political and economic circumstances," and "questions of national security." 585 U.S. 667, 702, 704 (2018). Plaintiffs respond that that standard cannot apply

9

to "claims brought by foreign nationals already here" (Opp. 22), ignoring that many TPS holders have never been admitted to the United States and accordingly are treated for constitutional purposes as though they were still at the border. *DHS v. Thuraissigiam*, 591 U.S. 103, 138-39 (2020). Plaintiffs' argument also ignores that *Hawaii* drew its standard from cases that turned on "the constitutional rights of a U.S. citizen," 585 U.S. at 703 (citing *Kleindienst v. Mandel*, 408 U.S. 753, 756-57 (1972)), "expulsion after long residence," *Harisiades v. Shaughnessy*, 342 U.S. 580, 588 (1952) (cited at *Hawaii*, 585 U.S. at 702), and the benefits available to "Cuban refugees" already in the country, *Mathews v. Diaz*, 426 U.S. 67, 81 (1976) (cited at *Hawaii*, 585 U.S. at 702). Indeed, *Hawaii* itself said its standard applies "across different contexts and constitutional claims" and "has particular force in admission *and immigration* cases"—not just admission cases—"that overlap with the area of national security." *Hawaii*, 585 U.S. at 703 (emphasis added).

Regardless, the Government would prevail under either standard. The statement on which Plaintiffs principally rely—a campaign-trail remark by the President (Opp. 22)—is plainly irrelevant under *Regents*, which involved an action that was even closer to the previous election. *See*

10

*DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 34-35 (2020). They also cite a remark about the President's intent to end Haiti's TPS designation, which too fails to suggest any animus whatsoever. Opp. 22. In all events, Plaintiffs identify no workable legal theory—actually, no theory at all— that could impute supposed Presidential animus to the Secretary. And the only statement by the Secretary that Plaintiffs invoke did not refer to Haiti or TPS at all. *See* Opp. 23. Such "remote in time" and "unrelated" statements do not suffice to establish a constitutional violation, even under Plaintiffs' preferred standard. *Regents*, 591 U.S. at 35.

## II.   The Equitable Factors Overwhelmingly Favor a Stay.

The remaining factors likewise favor the Government, as the Supreme Court necessarily concluded, twice, in a TPS case in which the plaintiffs asserted the same harms and made the same arguments about the Government's irreparable harm. Mot. 27-29; *see* Opp. 15-18, *Noem v. NTPSA*, No. 24A1059 (asserting loss of "work authorization," risk of "deportation to an unsafe country," "billions in economic losses nationwide," and lack of irreparable harm to government); Opp. at 37-40, *Noem v. NTPSA*, No. 25A326 (same).

Plaintiffs do not even mention the Supreme Court's orders in their discussion of the non-merits factors. They acknowledge them only in another part of their brief, arguing that the Court should ignore the Supreme Court because it did not explain its rationale. Opp. 18. But the Supreme Court explained that its second stay was warranted because the parties' "legal arguments and relative harms" were "generally" the same as in the first stay. *NTPSA*, 146 S. Ct. 23 (2025). It takes no guesswork to understand that order's implications for this stay motion, as the Ninth Circuit recently concluded in granting the Government's stay motion in another TPS case. *NTPSA VII* (acknowledging that "the equitable factors favor a stay" because the stay applications granted by the Supreme Court "involved similar assertions of harm by both parties").

Plaintiffs baldly assert that the case the Supreme Court considered was "factually distinct," but they identify precisely zero factual differences between the cases, material or otherwise. Opp. 18. Indeed, the most obvious difference—the additional threshold question in the Venezuela litigation of statutory authority to vacate a TPS extension—means the Government's position is, if anything, even stronger here. *See*

12

*NTPSA v. Noem*, -- F.4th --, 2026 WL 226573 (9th Cir. Jan. 28, 2026) (ruling exclusively on this issue).[3]

Last, Plaintiffs argue that the decision must not harm the Government because the Government did not seek a stay of district court orders staying or setting aside a different Haiti-related action. Opp. 11-12. But the import of those earlier orders was simply that termination of Haiti's TPS designation had to await February 2026, upon expiration of the prior extension. Now that the district court here has indefinitely blocked even that timely termination, the irreparable harm to the Government is no longer tolerable.

---

[3] The Second Circuit recently distinguished the Supreme Court's stays of attempts to delay the Venezuela termination based on the number of TPS holders, *see Dahlia Doe v. Noem*, No. 25-2995 (2d Cir. Feb. 17, 2026), at 3, but that purported distinction is not available here, where the size of the affected population is comparable.

13

## CONCLUSION

The Court should grant a stay pending appeal.

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

YAAKOV M. ROTH
*Principal Deputy Assistant Attorney General*

DREW C. ENSIGN
*Deputy Assistant Attorney General*

Dated:  February 19, 2026

<u>s/ Sarah Welch</u>
SARAH WELCH
*Counsel to the Assistant Attorney General*
950 Pennsylvania Ave. NW
Washington, D.C. 20530
(202) 514-3180

JEANINE FERRIS PIRRO
United States Attorney

JOHNNY H. WALKER, III
Assistant United States Attorney

DHRUMAN Y. SAMPAT
Assistant United States Attorney

# CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 27(d)(1), I certify that the text of this brief is in double-spaced, proportionally spaced 14-point Century Schoolbook type, and the brief is 2,508 words in compliance with Fed. R. App. P. 27(d)(2)(A).

> /s/ Sarah Welch
> SARAH WELCH
> *Counsel to the Assistant Attorney General*
> Attorney for Appellants

Dated: February 19, 2026

i

## CERTIFICATE OF SERVICE

    I hereby certify that on February 19, 2026, counsel for Appellants electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the D.C. Circuit by using the ACMS system and that service will be accomplished via the ACMS system.

                                      */s/ Sarah Welch*
                                      SARAH WELCH
                                      *Counsel to the Assistant Attorney General*
                                      Attorney for Appellants

Dated: February 19, 2026