# United States Court of Appeals
#### FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

**No. 26-5050**  **September Term, 2025**

**1:25-cv-02471-ACR**

**Filed On:** March 6, 2026

Fritz Emmanuel Lesly Miot, et al.,

      Appellees

  v.

Donald J. Trump, President of the United
States of America, et al.,

      Appellants

      **BEFORE**:    Walker[*], Pan, and Garcia, Circuit Judges

## O R D E R

Upon consideration of the emergency motion for a stay pending appeal, the opposition thereto, the reply, the amicus briefs, and the Rule 28(j) letters, it is

**ORDERED** that the motion for a stay be denied.

Plaintiffs-appellees are Haitian nationals who hold Temporary Protected Status (TPS) under 8 U.S.C. § 1254a. TPS is a form of humanitarian immigration protection that shields eligible nationals of designated countries from removal and authorizes them to work in the United States. *See id.* § 1254a(a)(1). The Secretary of Homeland Security may "designate" a country for TPS if she finds that "extraordinary and temporary conditions" in that country "prevent" its nationals from returning "in safety," unless she determines that allowing them to remain temporarily in the United States is "contrary to the national interest." *Id.* § 1254a(b)(1); *see* 6 U.S.C. § 557.

Haiti has been designated for TPS since 2010. *See Miot v. Trump*, 2026 WL 266413, at *3–6 (D.D.C. Feb. 2, 2026). The Department of Homeland Security recently estimated that there are "approximately 352,959" Haitian TPS holders in the United

---

[*] Judge Walker would grant the motion for a stay pending appeal for the reasons stated in the attached dissenting statement.

# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

_____

**No. 26-5050**                                                                                    **September Term, 2025**

States.  90 Fed. Reg. 54733, 54738 (Nov. 28, 2025).  On November 28, 2025, the Department published a notice in the Federal Register announcing that then-Secretary Noem was "terminating the Temporary Protected Status designation of Haiti."  *Id.* at 54733.  The plaintiffs sued and the district court postponed the termination under 5 U.S.C. § 705, finding it to be arbitrary and capricious, contrary to the TPS statute, and in violation of the Fifth Amendment's equal protection guarantee.

The government now seeks the "extraordinary" relief of a stay pending appeal.  *Citizens for Resp. & Ethics in Washington v. FEC*, 904 F.3d 1014, 1017 (D.C. Cir. 2018) (per curiam).  To secure such relief, the government must (1) make a "strong showing that [it] is likely to succeed on the merits"; (2) demonstrate that it will be "irreparably injured" if the district court's order remains in effect during the appeal; (3) show that issuing a stay will not "substantially injure the other parties interested in the proceeding"; and (4) establish that "the public interest" favors a stay.  *Nken v. Holder*, 556 U.S. 418, 434 (2009).  We focus on irreparable harm and the weighing of the equities because it is most clear that the government has not satisfied its burden on either score.  *See KalshiEX LLC v. Commodity Futures Trading Comm'n*, 119 F.4th 58, 64 (D.C. Cir. 2024) (noting that "a showing of irreparable harm is a necessary prerequisite for a stay").

In its stay motion, the government takes a minimalist approach to addressing the injuries it faces, arguing only that the district court's order imposes irreparable harm because it is "an improper intrusion into the workings" of the executive.  *See* Mot. 27 (quoting *INS v. Legalization Assistance Project*, 510 U.S. 1301, 1305–06 (1993) (O'Connor, J., in chambers)).  The sole elaboration it offers is that the district court's postponement of the termination of Haiti's TPS designation "overrides the Secretary's considered judgment on a matter of foreign affairs," which inflicts "harm [that] is particularly pronounced" in light of the Secretary's finding "that maintaining Haiti's TPS designation is contrary to the national interest."  *Id.* at 28; *see* 90 Fed. Reg. at 54735–38.

These "generalized assertions of injury" are insufficient to support a stay pending appeal.  *Fed. Educ. Ass'n v. Trump*, 2025 WL 2738626, at *3 (D.C. Cir. Sept. 25, 2025) (per curiam).  The government must demonstrate an injury that is "both certain and great," and "of such *imminence* that there is a clear and present need for equitable relief to prevent irreparable harm."  *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) (cleaned up).  Of course, courts must be sensitive to

# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

_____

**No. 26-5050**  **September Term, 2025**

intrusions on executive branch prerogatives. But when faced with requests for emergency stays of considered lower-court orders, we have been appropriately skeptical of the idea that the government is irreparably injured "any time" it is enjoined by a court, particularly when the order at issue "maintains the status quo." *Make the Rd. N.Y. v. Noem*, 2025 WL 3563313, at *31–32 (D.C. Cir. Nov. 22, 2025) (cleaned up). As the district court observed in declining to stay its order, the government has failed to "name a single concrete harm from maintaining the status quo" in this case. *Miot v. Trump*, 2026 WL 544434, at *2 (D.D.C. Feb. 23, 2026).

The government instead relies on the Supreme Court's two stay orders in another TPS-related case, *National TPS Alliance v. Noem*. There, the Northern District of California postponed the Secretary's decisions to vacate a prior extension of Venezuela's TPS designation and then to terminate that designation entirely. *See Nat'l TPS All. v. Noem*, 773 F. Supp. 3d 807 (N.D. Cal. 2025), *aff'd*, 150 F.4th 1000 (9th Cir. 2025). The Supreme Court stayed that postponement order without explanation. *See Noem v. Nat'l TPS All.*, 145 S. Ct. 2728 (2025) (*NTPSA I*). The Northern District of California subsequently entered final judgment against the government, setting aside the Secretary's vacatur and termination decisions as to Venezuela's TPS designation, and the Secretary's vacatur of a prior extension of Haiti's TPS designation. *See Nat'l TPS All. v. Noem*, 798 F. Supp. 3d 1108 (N.D. Cal. 2025), *aff'd*, 166 F.4th 739 (9th Cir. 2026). The government applied for a stay of that decision, but only with respect to "the portions of the District Court's judgment pertaining to Venezuela." *Noem v. Nat'l TPS All.*, 146 S. Ct. 23, 24 (2025) (*NTPSA II*). The Supreme Court granted the government's request; that second stay order, like the first, contained no substantive reasoning. *See id.*

In the government's view, the *NTPSA* stay orders "necessarily" support its stay motion here because they involved "the same harms." Reply 11; *see* Mot. 27. That assertion merits careful consideration. The *NTPSA* orders "inform" how we should approach "like cases," *Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025), and the Supreme Court must have found some irreparable harm to the government when issuing them. But given the lack of express guidance from the Court, we must assess whether there are any material "differences between the cases." Reply 12.

A closer examination shows that *NTPSA* is meaningfully distinct from this case. First, the government asserted a concrete and imminent harm there that is absent here. In that litigation, the government explained that halting the termination of Venezuela's

Page 3

United States Court of Appeals
FOR THE DISTRICT OF COLUMBIA CIRCUIT
_____

**No. 26-5050**                                                                    **September Term, 2025**

TPS designation would "undermine the United States' foreign policy just as the government is engaged in complex and ongoing negotiations with Venezuela." *See* Stay Application 37, *NTPSA I*; *see also* Stay Application 24, *NTPSA II* (similar). It is not only plausible but likely that disruption to those specific ongoing negotiations was a factor motivating the stays. *See Adams v. Vance*, 570 F.2d 950, 954 (D.C. Cir. 1978) (per curiam) ("Courts must beware ignoring the delicacies of diplomatic negotiation . . . ." (internal quotation marks omitted)). By contrast, the stay motion here references no such diplomatic concerns. To the contrary, the government has underscored that "Haiti lacks a central authority" with which it can engage. 90 Fed. Reg. at 54736.

Second, as noted above, in the *NTPSA* litigation the district court set aside the Secretary's vacatur of an extension of Haiti's TPS designation. In practical terms, that decision prevented the government from ending Haiti's TPS designation in August 2025 and instead kept the designation in place until February 2026. *Nat'l TPS All. v. Noem*, 798 F. Supp. 3d at 1128. On September 19, 2025, the government sought a stay of other parts of the district court's order, but it specifically declined to seek relief as to the portion of the decision concerning Haiti's TPS designation. *See* 146 S. Ct. at 24. The government explained that it had no urgent need for a stay because Haiti's TPS designation would expire "in the next few months"—that is, four and a half months later in February 2026. Stay Application 7–8 n.6, *NTPSA II*. But here too, it should be no more than a "few months" before this court can adjudicate the government's appeal on the merits. Yet the government does not explain what has changed to make the continued presence of Haitian TPS holders during that interim period a matter of "imminen[t]" irreparable harm. *See Chaplaincy of Full Gospel Churches*, 454 F.3d at 297.

The government's failure to meet its burden of demonstrating irreparable harm alone justifies denying emergency relief that would upend the status quo and increase uncertainty while this appeal proceeds. *See KalshiEX LLC*, 119 F.4th at 63 (noting that failure to demonstrate irreparable harm is "fatal" to an applicant's stay request). But even assuming the government faces some irreparable harm, we must also "balance the equities and weigh the relative harms to the" parties. *Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010). The two distinctive factors discussed—the lack of any imminent negotiations with the Haitian government or other concrete injury, and the government's failure to treat an earlier order prolonging Haiti's TPS designation as an emergency—at least lessen the degree of harm to the government. The equities in favor of the

# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

_____

**No. 26-5050**                                                                                 **September Term, 2025**

government are thus not as weighty here as they were in *NTPSA*.

On the other side of the ledger, the plaintiffs face substantial and well-documented harms.  As the district court detailed at length, the termination of TPS would have "devastating" consequences for the plaintiffs, including risk of detention and deportation, separation from family members, and loss of work authorization.  *Miot*, 2026 WL 266413, at *34–36.  Moreover, plaintiffs removed to Haiti would be vulnerable to violence amid a "collapsing rule of law" and lack access to life-sustaining medical care.  *Id*.  To be sure, the Supreme Court has explained that "the burden of removal alone cannot constitute the requisite irreparable injury" to a noncitizen.  *Nken*, 556 U.S. at 435.  But it did so on direct review of a removal order, observing that "those who prevail" in that context "can be afforded effective relief by facilitation of their return."  *Id.*; *see* Brief for Respondent at 44, *Nken*, 556 U.S. 418 (No. 08-681), 2009 WL 45980 (discussing the government's "policy and practice" of "facilitating" the return of "aliens who were removed pending judicial review but then prevailed before the courts").  Here, by contrast, the government has declined to represent that it would provide similar relief if the plaintiffs ultimately prevail in this litigation.  *See* Tr. of Hr'g 16–20 (Feb. 17, 2026).  On this record, the balance of equities tilts decisively toward the plaintiffs, providing a second reason that a stay pending appeal is not justified.

We respectfully disagree with our dissenting colleague's contrary conclusion.  Two points merit emphasis.  First, Judge Walker's view on each of the stay factors is colored largely by his view of the merits.  But the government bears the burden of separately demonstrating each of *Nken*'s requirements.  And though we do not find it necessary to resolve the government's likelihood of success on the merits given our conclusions above, the dissent oversimplifies matters by asserting that the TPS statute's plain text deprives the district court of jurisdiction over plaintiffs' suit.  True, the statute provides that "[t]here is no judicial review of any determination of the [Secretary]" regarding a "termination or extension of a designation."  8 U.S.C. § 1254a(b)(5)(A).  But the vast majority of courts to address the question have concluded—drawing in part on *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479 (1991), and the "presumption favoring judicial review of administrative action," *Kucana v. Holder*, 558 U.S. 233, 251 (2010)—that the statute does *not* bar challenges, like plaintiffs', to the process by which a TPS determination is reached as opposed to challenges to the determination itself.[*]

---

[*] *See, e.g.*, *Doe v. Noem*, 2026 WL 544631, at *1 (2d Cir. Feb. 17, 2026); *Nat'l TPS All. v. Noem*, 166 F.4th 739, 757 (9th Cir. 2026); *Miot*, 2026 WL 266413, at

# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

**No. 26-5050**                                                            **September Term, 2025**

Second, as to irreparable harm, the dissent defends the government's choice not to seek relief in the *NTPSA II* litigation but to do so here on the ground that the government has always been consistent that Haiti's TPS designation needed to end in February 2026.  Dissent 6 n.21.  That view ignores that the government had attempted to end Haiti's TPS designation by August 2025.  So the problem remains:  The government has not explained why its inability to terminate Haiti's TPS at its preferred date was for many months tolerable but now constitutes a "certain," "great," and "imminen[t]" harm.  *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297.

The dissent's approach reduces to the proposition, sourced to *Trump v. CASA, Inc.*, 606 U.S. 831 (2025), that any and every injunction entered against the government categorically imposes irreparable harm—even when the government previously treated that same harm as bearable.  That position "overstates the holding" of *CASA*. *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1063 (7th Cir. 2025). *CASA* was tethered to the distinct context of a "universal injunction against the government."  606 U.S. at 859.  Absent clearer guidance from the Court, we decline to read it as having endorsed such a broad and seemingly novel proposition.

**Per Curiam**

|  | **FOR THE COURT:**<br>Clifton B. Cislak, Clerk |
|---|---|
| BY: | /s/<br>Daniel J. Reidy<br>Deputy Clerk |

---

\*10–13; *Afr. Communities Together v. Noem*, 2026 WL 395732, at \*7 (D. Mass. Feb. 12, 2026); *Doe v. Noem*, 2026 WL 184544, at \*8 (N.D. Ill. Jan. 23, 2026); *Haitian Evangelical Clergy Ass'n v. Trump*, 789 F. Supp. 3d 255, 269 (E.D.N.Y. 2025); *Centro Presente v. U.S. Dep't of Homeland Sec.,* 332 F. Supp. 3d 393, 406–09 (D. Mass. 2018); *Saget v. Trump*, 375 F. Supp. 3d 280, 330–33 (E.D.N.Y. 2019); *CASA de Maryland, Inc. v. Trump*, 355 F. Supp. 3d 307, 320–22 (D. Md. 2018).

WALKER, *Circuit Judge*, dissenting:

In 2010, the Secretary of Homeland Security designated Haiti for Temporary Protected Status.[1] That allowed Haitians in the United States to stay here and work here.[2] Now, sixteen years later, the Secretary has decided to terminate Haiti's temporary designation.[3]

The Plaintiffs sued. The district court stayed the termination. The Government moved in this court for a stay of the district court's stay while the Government appeals.

As the Supreme Court and the Ninth Circuit have done in extraordinarily similar cases, I would grant the Government's request for emergency relief.[4] The Government is likely to prevail on the merits, it is irreparably harmed, and the equities favor the Government.[5]

---

[1] Designation of Haiti for Temporary Protected Status, 75 Fed. Reg. 3476 (January 21, 2010). The designation has been extended numerous times, most recently on July 1, 2024. Extension of Redesignation of Haiti for Temporary Protected Status, 89 Fed. Reg. 54484.

[2] Designation of Haiti for Temporary Protected Status, 75 Fed. Reg. 3476 (January 21, 2010).

[3] Termination of the Designation of Haiti for Temporary Protected Status, 90 Fed. Reg. 54733 (November 28, 2025).

[4] *Noem v. NTPSA*, 145 S. Ct. 2728 (2025) (*NTPSA I*) (Venezuela); *Noem v. NTPSA*, 146 S. Ct. 23 (2025) (*NTPSA II*) (Venezuela); *NTPSA v. Noem*, No. 26-199 (9th Cir. February 9, 2026) (Nepal, Honduras, Nicaragua); *see also id.* slip op. at 6 (Hawkins, J., concurring) ("I concur in the result and specifically in Section 3 of the Order, heeding guidance from the Supreme Court's stay orders in the Venezuela TPS status case in this circuit.").

[5] *See Nken v. Holder*, 556 U.S. 418, 434 (2009).

2

The Government is irreparably harmed by "an improper intrusion by a federal court into the workings of a coordinate branch of the Government."[6] To the extent our court has

---

[6] *INS v. Legalization Assistance Project*, 510 U.S. 1301, 1305-06 (1993) (O'Connor, J., in chambers); *see also Trump v. CASA, Inc.*, 145 S. Ct. 2540, 2562 (2025) ("the Government is likely to suffer irreparable harm from the District Courts' entry of injunctions that likely exceed the authority conferred by the Judiciary Act"); *Trump v. Wilcox*, 145 S. Ct. 1415, 1416-17 (2025) ("the Government faces greater risk of harm from an order allowing a removed officer to continue exercising the executive power than a wrongfully removed officer faces from being unable to perform her statutory duty"); *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) ("Any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." (cleaned up)); *American Foreign Service Association v. Trump*, No. 25-5184, 2025 WL 1742853, at *3 (D.C. Cir. June 20, 2025) ("The district court's preliminary injunction inflicts irreparable harm on the President by interfering with the national-security determinations entrusted to him by Congress."); *Media Matters for America v. FTC*, No. 25-5302, 2025 WL 2988966, at *19 (D.C. Cir. October 23, 2025) (Walker, J., dissenting) ("The FTC has an interest in lawfully enforcing consumer protection laws, and it was irreparably harmed when the district court enjoined its lawful activity." (cleaned up)); William Baude et al., *Hart & Wechsler's The Federal Courts and the Federal System* 388 (8th ed. 2025) ("The rule in *Maryland v. King* — that the government as applicant for emergency relief suffers irreparable injury whenever its statutes (or regulations) are enjoined — appears now to be followed by most of the Justices. The satisfaction of the irreparable harm prong in any case where the government seeks emergency relief from an injunction of one of its programs is an important reason why, in such instances, the Court's analysis of the merits predominates.") (citing *Abbott v. Perez*, 585 U.S. 579, 602 n.17 (2018); *Republican Party of Pennsylvania v. Degraffenreid*, 141 S. Ct. 732, 733 (2021) (Thomas, J., dissenting from denial of certiorari); *Little v. Reclaim Idaho*, 140 S. Ct. 2616, 2617 (2020)

3

occasionally required more than that by echoing the dissenters in *Trump v. CASA*, those requirements conflict with *CASA*'s holding.[7]

The Government's harm would be lightened, perhaps significantly, if the Government were unlikely to prevail on the merits.[8] But for Temporary Protected Status, "[t]here is no judicial review of any determination of the [Secretary] with respect to the designation, or termination or extension of a

---

(Roberts, C.J., joined by Alito, Gorsuch, and Kavanaugh, JJ., concurring in grant of stay)).

[7] *Cf. CASA*, 145 S. Ct. at 2581 (Sotomayor, J., dissenting) ("[The majority] turns one of the most critical factors we must consider in deciding whether to grant a stay" — the irreparable-harm factor — "into a box-checking exercise whenever the relevant enjoined action is an executive one." (cleaned up)); *id.* at 2580 ("What grave harm does the Executive face that prompts a majority of this Court to grant it relief?  The answer, the Government says, is the inability to enforce the Citizenship Order against nonparties.  For the majority, that answer suffices."); *Make the Road New York v. Noem*, 2025 WL 3563313, at *31 (D.C. Cir. Nov. 22, 2025); *Federal Education Association v. Trump*, 2025 WL 2738626, at *3 (D.C. Cir. Sept. 25, 2025).

[8] *See Labrador v. Poe*, 144 S. Ct. 921, 929 (2024) (Kavanaugh, J., concurring) ("Courts historically have relied on likelihood of success as a factor because, if the harms and equities are sufficiently weighty on both sides, the best and fairest way to decide whether to temporarily enjoin a law pending the final decision is to evaluate which party is most likely to prevail in the end."); *Huisha-Huisha v. Mayorkas*, 27 F.4th 718, 734 (D.C. Cir. 2022) ("the Plaintiffs' likelihood of success on the merits lightens the Executive's stated interests").

4

designation, of a foreign state."⁹ So at this preliminary stage, the Government appears likely to prevail.¹⁰

That leaves the other equities — injury to the Plaintiffs, and the public interest.¹¹ And here the Plaintiffs have a point.¹² If termination means the unlawful removal to Haiti of Plaintiffs who would prefer to stay in America, the Plaintiffs are injured: America is a safe and developed nation with individual liberties and economic opportunity — Haiti is not.¹³ And the public has an interest in "preventing aliens from being wrongfully removed, particularly to countries where they are likely to face substantial harm."¹⁴

But whether the Plaintiffs might one day be "*wrongfully removed*" just leads us back to the merits, including the "temporary" nature of Temporary Protected Status. Most temporary things last, at most, days, weeks, or maybe months — not sixteen years. And because "removal alone cannot constitute the requisite irreparable injury" (even for

---

⁹ 8 U.S.C. § 1254a(b)(5)(A).

¹⁰ *See CASA*, 145 S. Ct. at 2571 (Kavanaugh, J., concurring) ("[D]istrict courts and courts of appeals are . . . not perfectly equipped to make expedited preliminary judgments on important matters of this kind. Yet they have to do so, and so do we. By law, federal courts are open and can receive and review applications for relief 24/7/365.") (citing 28 U.S.C. § 452).

¹¹ *See Nken*, 556 U.S. at 434.

¹² *Cf. Labrador*, 144 S. Ct. at 929 (Kavanaugh, J., concurring) ("not infrequently — especially with important new laws — the harms and equities are very weighty on both sides").

¹³ *See Miot v. Trump*, __ F. Supp. 3d __, 2026 WL 266413, at *4-6 (D.D.C. February 2, 2026) (describing Haiti); *cf. Byrne v. Boadle*, 159 Eng. Rep. 200 (Exch. 1863).

¹⁴ *Nken*, 556 U.S. at 436.

5

someone seeking *permanent* withholding of removal), neither does the lawful termination of *Temporary* Protected Status.[15] Likewise, because "[t]here is always a public interest in prompt execution of removal orders" (even for orders that *can* be reviewed in court), there is an equal or greater public interest in the prompt execution of the Secretary's *unreviewable* termination order.[16]

Perhaps that is why the Supreme Court twice stayed lower court decisions preventing TPS terminations.[17] Or perhaps not — the Supreme Court's emergency orders did not explain its conclusion that the equities favored the Government. So the Plaintiffs are correct that we cannot know with certainty every reason why the Supreme Court reached that conclusion.

But we *can* know that it *did* reach that conclusion. Otherwise, it could not have issued the stays. And we forget our place in the judicial hierarchy when the Supreme Court's stays do not inform "how [we] should exercise [our] equitable discretion in like cases."[18]

The majority distinguishes today's case from *NTPSA I* and *NTPSA II* because the Government's injury was arguably greater there than here. But here again, the merits affect the equities. In *NTPSA I*, in *NTPSA II*, and in this case, it is undoubtedly in the interests of the Plaintiffs to stay in the United States, and in those cases and this one, the Secretary has made a formal determination in the exercise of unreviewable discretion that it is in the "national interest" for the Plaintiffs to

---

[15] *Id.* at 435.

[16] *Id.*

[17] *See NTPSA II*, 146 S. Ct. 23; *NTPSA I*, 145 S. Ct. 2728.

[18] *Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025).

6

leave.[19] The weight of those equities does not materially change just because a court thinks the Secretary's reasons for the national-interest decision were stronger there than here — after all, Congress has told us *not* to review the Secretary's decision.[20] That makes those cases and today's case too similar to distinguish — the legal equivalent of fraternal, if not identical, twins.[21]

With respect, I dissent.[22]

---

[19] *Compare* Termination of the October 3, 2023 Designation of Venezuela for Temporary Protected Status, 90 Fed. Reg. 9040 (February 5, 2025), *with* Termination of the Designation of Haiti for Temporary Protected Status, 90 Fed. Reg. 54733 (November 28, 2025).

[20] *See* 8 U.S.C. § 1254a(b)(5)(A) ("There is no judicial review of any determination of the [Secretary] with respect to the designation, or termination or extension of a designation, of a foreign state.").

[21] The majority also notes that in the *NTPSA* litigation, the Government did not seek a stay in September 2025 after a district court set aside the Secretary's vacatur of an extension of Haiti's designation for Temporary Protected Status. But that's because the Government said it could wait until Haiti's designation expired in February 2026. But we are, of course, now *past* February 2026. And the Government said then, and says now, that the nation needs the designation's termination to go into effect no later than February 2026. In other words, the Government's position didn't change. The only thing that changed is the calendar — and with it, the need for a stay.

[22] In the past year, plaintiffs challenging federal policies have often (but not always) prevailed on motions for emergency relief in the lower courts. Meanwhile, the Government has often (but not always) prevailed on the Supreme Court's emergency docket. It has already

7

---

happened with other cases about Temporary Protected Status. And it might happen again here.

That *Groundhog Day* dynamic is not unprecedented, *cf.* William Baude, *Foreword: The Supreme Court's Shadow Docket*, 9 N.Y.U. J.L. & Liberty 1, 44 (2015) (from roughly 2005 to 2015, on the non-emergency orders docket, "there were sixteen state-on-top summary reversals in AEDPA cases"), even if "the volume of cases challenging new laws and coming to [the Supreme] Court on the emergency docket is a relatively recent development." *Labrador*, 144 S. Ct. at 934 (Kavanaugh, J., concurring); *see also id.* ("The emergency docket has always existed, and both the Court and even individual Justices acting in chambers have made a plethora of important decisions for the Nation in an emergency posture.") (citing examples that include *West Virginia v. EPA*, 577 U.S. 1126 (2016); *Purcell v. Gonzalez*, 549 U.S. 1 (2006); *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952)). It is the product of, among other things, a judicial hierarchy with one Supreme Court atop nearly 1,500 federal judges. When judges and justices disagree, it does not mean they are harboring nefarious motives, making outcome-based decisions, or intentionally twisting the non-partisan, neutral legal principles that divide formalists and functionalists, minimalists and maximalists, hawks and doves on standing, stare decisis traditionalists and skeptics, unitary executive theorists and doubters, and on and on and on. And even when some of our nation's almost 1,500 federal judges issue decisions that could be uncharitably explained, *cf. DHS v. DVD*, 145 S. Ct. 2627, 2630 (2025) ("a claim that a lower court has failed to give effect to an order of this Court is properly addressed here"); *id.* at 2630 (Kagan, J., concurring) (". . . I do not see how a district court can compel compliance with an order that this Court has stayed."), I try to give their motives the benefit of the doubt that I aspire to earn from them.