**No. 26-5050**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

**FRITZ EMMANUEL LESLY MIOT, ET AL.,**
*Appellees,*

*v.*

**DONALD J. TRUMP, ET AL.,**
*Appellants.*

On Appeal from the U.S. District Court for the District of Columbia
No. 1:25-cv-2471 (Reyes, J.)

**APPELLEES' OPPOSITION TO
APPELLANTS' RENEWED STAY MOTION**

Geoffrey M. Pipoly
Bryan Cave Leighton Paisner, LLP
161 N. Clark Street, Suite 4300
Chicago, IL 60601
(312) 602-5000
geoff.pipoly@bclplaw.com

Abby West
Bryan Cave Leighton Paisner, LLP
211 N. Broadway, Suite 3600
(314) 259-2597
St. Louis, MO 63102
abby.west@bclplaw.com

Andrew E. Tauber
Bryan Cave Leighton Paisner, LLP
1155 F Street N.W., Suite 700
Washington, DC 85004-4406
(202) 508-6111
andrew.tauber@bclplaw.com

Jean-Claude André
Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, CA 90401-2386
(310) 576-2100
jc.andre@bclplaw.com

*Attorneys for Appellees
(additional counsel listed inside)*

Ira J. Kurzban
Kevin Gregg
Kurzban, Kurzban, Tetzeli & Pratt, P.A.
131 Madeira Ave.
Coral Gables, FL 33134
(305) 444-0060
ira@kktplaw.com

Raymond Audain
Giskan Solotaroff & Anderson LLP
1 Rockefeller Plaza, 8th Floor
New York, NY 10020
(646) 290-6249
raudain@gslawny.com

Sejal Zota
Just Futures Law
1629 K Street N.W., Suite 300
Washington, DC 20006
(617) 812-2822
sejal@justfutureslaw.org

## Table of Contents

Page

INTRODUCTION ..................................................................................1

BACKGROUND...................................................................................2

ARGUMENT.......................................................................................4

I.  This Court Does Not Have Jurisdiction Over the Postponement
    Order Until the Supreme Court Mandate Issues. ...........................5

II. The Government Is Attempting an End-Run Around Supreme
    Court Procedure................................................................................7

III. The Government Will Not Suffer Irreparable Injury in the
     Absence of a Stay.............................................................................9

CONCLUSION ..................................................................................13

CERTIFICATE OF COMPLIANCE.....................................................14

## INTRODUCTION

Citing the Supreme Court's recent decision in *Mullin v. Doe*, the government again asks that this Court stay the district court order postponing the termination of Haiti's TPS designation. But the relief that the government requests is relief that the Supreme Court has already denied. On June 30, five days after issuing its merits decision, the Supreme Court rejected the government's stay application. There is no reason for this Court to grant relief that the Supreme Court has denied.

Indeed, this Court cannot grant the relief that the government seeks. This Court will not regain jurisdiction over the case until the Supreme Court issues its mandate. The mandate has yet to issue.

The government claims that it will suffer irreparable harm if its stay request is denied. According to the government, allowing Haitian TPS holders to remain in the United States even one day longer is "contrary to the national interest." But Haitian TPS holders have lived and worked here for decades without problem. There is no crisis that warrants granting the government extraordinary relief so that it can immediately begin deportations.

1

To the contrary, the immediate deportation of Haitian TPS holders would wreak havoc in our communities, ripping parents and spouses from their families while depriving hospitals and other critical facilities of essential workers.

This Court should deny the government's motion and allow this case to proceed in the ordinary course on remand after the Supreme Court issues its mandate.

## BACKGROUND

On February 2, 2026, the district court temporarily postponed the effective date of the termination of Haiti's TPS designation. *Miot v. Trump*, 818 F. Supp. 3d 126 (D.D.C. 2026).

Both the district court and this Court denied the government's successive motions to stay that order pending appeal. *Miot v. Trump*, No. 25-cv-02471, 2026 WL 544434 (D.D.C. Feb. 23, 2026); *Miot v. Trump*, No. 26-5050, 2026 WL 659420 (D.C. Cir. Mar. 6, 2026).

Having received no relief below or in this Court, the government turned to the Supreme Court. It asked that the Court stay the district court order and grant certiorari before judgment. *Trump v. Miot*, No. 25-

1084 (Mar. 11, 2026). The Supreme Court granted certiorari but deferred ruling on the stay application. *Miot*, No. 25-1084 (Mar. 16, 2026).

On June 25, 2026, the Court reversed the district court's order and remanded for further proceedings. *Mullin v. Doe*, 609 U.S. ----, 2026 WL 1825840 (U.S. June 25, 2026). That same day, the Court informed this Court that its mandate would "not issue for at least thirty-two days pursuant to Rule 45." Dkt. No. 32.

Five days later, on June 30, the Court denied the government's pending stay application. *Mullin v. Doe*, No. 25-1083, 2026 WL 1871302 (U.S. June 30, 2026).

When the district court's postponement order is lifted, Plaintiffs will lose not only their work authorization but also protection from detention and deportation. Deportation to Haiti could prove fatal, as it has for others recently deported there. [1] The Supreme Court acknowledges that conditions in Haiti are "unquestionably difficult." *Doe*, 2026 WL 1825840, at *12. Indeed, the State Department admits that Haiti is "unsafe due to 'kidnapping, crime, terrorist activity, civil unrest,

---

[1]    *See* Héctor Ríos Morales, *Four Haitian Women Were Deported from Puerto Rico; They Have Now Been Found Decapitated*, LATIN TIMES (Feb. 4, 2026), https://perma.cc/XP2J-Y8EK.

and limited health care.'" *Doe*, 2026 WL 1825840, at \*19 n.2 (Kagan, J., dissenting) (citing State Department Travel Advisory).[2]

The Supreme Court could issue its mandate as early as July 27. *See* Dkt. No. 32. Once issued, the case will be promptly remanded to this Court and then the district court. The termination of Haiti's TPS designation will take effect soon thereafter.

## ARGUMENT

Rather than wait two weeks for the Supreme Court's mandate to issue in the normal course, the government asks that this Court stay the district court order so that the government may immediately begin deporting Haitian TPS holders. The government's request is without merit.

To start, the government's request is procedurally barred. This Court will not regain jurisdiction over the case—and thus may not act on the government's request—until the Supreme Court issues its mandate, something that has yet to happen.

---

[2]    Plaintiffs detailed in their opposition to the government's initial stay application some of the horrific harms that they will suffer if the district court order is stayed. *See* Doc. 2159205 at 6–11.

4

Regardless, the government's request should be denied even if the Court has the authority to grant it.

The government's three previous stay applications were denied by the district court, this Court, and ultimately the Supreme Court after its decision in *Doe*. The government now seeks a stay for the fourth time. Its latest request should be denied just as its previous requests were.

Were there truly an emergency that necessitated the immediate deportation of Haitian TPS holders, the government could have asked the Supreme Court to expedite issuance of the mandate. But the government did not do so. Nor has it presented this Court with any evidence that it would suffer irreparable injury if the district court order remains in place until the mandate issues and the case is remanded. Plaintiffs, by contrast, have presented overwhelming evidence that they would suffer irreparable—possibly fatal—injury if the district court order is lifted. Under these circumstances, the government is not entitled to the extraordinary relief that it seeks.

## I.    This Court Does Not Have Jurisdiction Over the Postponement Order Until the Supreme Court Mandate Issues.

This Court lacks jurisdiction over the government's motion.

5

Once an appeal has been taken, the lower court "does not regain jurisdiction … until" the reviewing court "issues its mandate." *United States v. DeFries*, 129 F.3d 1293, 1302–03 (D.C. Cir. 1997); *accord, e.g.*, *Universitas Educ., LLC v. Avon Cap.*, LLC, 124 F.4th 1231, 1242 (10th Cir. 2024); *United States v. Rodgers*, 101 F.3d 247, 251 (2d Cir. 1996). "Simply put, jurisdiction follows the mandate." *United States v. Rivera*, 844 F.2d 916, 921 (2d Cir. 1988); *accord Johnson v. Bechtel Assocs. Pro. Corp.*, 801 F.2d 412, 415 (D.C. Cir. 1986). Because the mandate "is necessary to reinvest the lower court with jurisdiction" to act, "until the mandate is issued, the lower court order remains in effect, even if vacated on appeal." 5 Am. Jur. 2d Appellate Review § 679 (2026).

That principle is dispositive here. The Supreme Court has not issued its mandate.[3] To the contrary, it has told this Court that the mandate "will not issue for at least thirty-two days" from June 25, *i.e.*, not before July 27. Dkt. No. 32. Until the mandate issues, this Court lacks authority to grant the government's motion.

---

[3]    To be precise, the Supreme Court has yet to issue "a certified copy of the judgment," which is how it typically concludes an appeal from a federal court. Sup. Ct. R. 45(3). Nevertheless, for simplicity's sake, Plaintiffs will refer to the certified copy of the *Doe* judgment as the Supreme Court's "mandate."

## II. The Government Is Attempting an End-Run Around Supreme Court Procedure.

The government's motion is an attempt to side-step Supreme Court procedure.

The Supreme Court denied the government's stay application five days after rendering its decision in *Doe*. 2026 WL 1871302. The government did not seek rehearing in the Supreme Court and does not claim that anything has changed in the interim. The government is, in effect, asking this Court to sit in review of the Supreme Court. That inverts the judicial hierarchy.

Generally, the Supreme Court does not issue its mandate until 32 days after rendering a decision. It has discretion, however, to "shorten[] or extend[] the time." Sup. Ct. R. 45(3). The Court has repeatedly exercised that discretion to expedite the issuance of a mandate when time is critical. *See, e.g.*, *Callais v. Louisiana*, 146 S. Ct. 1111 (2026) (issuing "judgment forthwith" in a redistricting challenge to facilitate compliance in advance of upcoming elections); *Vance v. Trump*, 2020 WL 4033094 (U.S. July 17, 2020) (mem.) (issuing judgment forthwith to facilitate the presentation of evidence to a state grand jury before the applicable statutes of limitations expired); *Bush v. Gore*, 531 U.S. 98, 111 (2000)

(directing clerk "to issue the mandate … forthwith" where election hung in the balance); *United States v. Nixon*, 418 U.S. 683, 716 (1974) (issuing judgment forthwith where "time [wa]s of the essence" "during the pendency of a criminal prosecution"). In short, "[w]hen the Court wants its judgment to take effect sooner, it says so." *Texas v. United States*, 798 F.3d 1108, 1118 (D.C. Cir. 2015). Here, the Supreme Court said no such thing. To the contrary, it expressly stated that the judgment would "not issue for at least thirty-two days," that is, not until at least July 27. Dkt. No. 32.

The government could have asked the Supreme Court to expedite issuance of the mandate, just as the parties did, for example, in *Callais* and *Vance*. But the government chose not to. Rather than ask the Supreme Court for relief that it was unlikely to receive after the Court's denial of its stay application, the government seeks relief in this Court instead, asking that it stay the district court order to "promptly effectuate the Supreme Court's decision." Renewed Stay Motion ("Mot.") 2.

The Supreme Court denied the government's stay application and chose not to expedite the mandate. This Court should not countenance the government's attempt to circumvent the Supreme Court.

8

## III. The Government Will Not Suffer Irreparable Injury in the Absence of a Stay.

A stay is an "intrusion into the ordinary processes of administration and judicial review." *Nken v. Holder*, 556 U.S. 418, 427 (2009) (quoting *Virginia Petroleum Jobbers Assn. v. FPC*, 259 F.2d 921, 925 (D.C. Cir. 1958) (per curiam)). Thus, a stay "is not a matter of right" but instead "an exercise of judicial discretion." *Id.* at 433 (quoting *Virginian Ry. v. United States*, 272 U.S. 658, 663 (1926)). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Id.* at 433–34. Among other things, the party seeking a stay must show that it would be "irreparably injured" absent a stay. *Id.* at 434. That showing is necessary but not sufficient: Given a stay's discretionary nature, a party has no right to a stay "even if irreparable injury might otherwise result." *Id.* at 427 (quoting *Virginian Ry.*, 272 U.S. at 672).

Here, the government has failed to carry its burden of demonstrating an entitlement to a stay. The government has not—and cannot—show that it would suffer irreparable harm absent a stay.

There is no urgency. For years, hundreds of thousands of Haitian TPS holders have lived in the United States without incident, and no

9

emergency requires their immediate expulsion. *See* Doc. 2159205 (Stay Opp.) at 11.

The government's claim that it suffers irreversible injury "[e]ach day" (Mot. 2) that district court order remains in place is belied by the government's own conduct. As Plaintiffs explained in their opposition to the government's initial stay motion, the government did not seek a stay when, long before the Supreme Court's decision in *Doe*, two courts blocked the administration's "partial vacatur" of Haiti's TPS designation and thereby effectively extended the designation by six months past the administration's preferred end date. Doc. 2159205 at 11–12. Nor did the government seek to expedite its appeals from those orders. At no point in the litigation over the "partial vacatur" did the government claim that the continued presence of Haitian TPS holders caused it to suffer irreparable harm on a daily basis.

Nothing has changed in the weeks since the *Doe* decision. Although hundreds of thousands of Haitian TPS holders continue to live among us, the sky has not fallen. Nor will it.[4]

Insisting that it will suffer irreparable harm if the district court is not stayed, the government asserts:

> The harm to the Government and the public interest is particularly acute and concrete here because the Secretary determined Haiti's TPS designation "is contrary to the national interest" for numerous reasons. Termination of the Designation of Haiti for Temporary Protected Status, 90 Fed. Reg. 54,733, 54,737 (Nov. 28, 2025). Haitian gangs "pose a

---

[4]    To the contrary, chaos would ensue if the government were allowed to detain and deport Haitian TPS holders even before the Supreme Court issues its mandate. For example, as entities that "serve[] older adults, including residents in independent living, assisted living, memory care, short-term rehabilitation, and longterm skilled nursing settings" have explained, "Haitian TPS holders" are an "indispensable" and "core part of the caregiving workforce on which many providers and residents rely." Br. of Sinai Residences and LeadingAge Southeast as Amici Curiae in Support of Respondents at 6, *Mullin v. Doe*, 606 U.S. ---- (2026) (No. 25-1083), 2026 WL 1081650, at \*2. Because "workers cannot be replaced at scale on short notice" in "a sector that was already understaffed and straining to recruit and retain workers," the "immediate loss of TPS work authorization" would "disrupt[] care delivery," with an adverse impact on elderly and medically vulnerable adults in U.S. communities." *Id.* at \*9, \*12, \*16 (capitalization altered). The disruption would not be limited to the healthcare industry; Haitian TPS holders are essential workers throughout the economy. *See, e.g.*, Br. of Amicus Curiae Springfield Neighbors United in Support of Respondents at 6–16, 27–30, *Mullin v. Doe*, 606 U.S. ---- (2026) (No. 25-1083); Br. of the Commonwealth of Mass et al. in Support of Respondents at 16–26, *Mullin v. Doe*, 606 U.S. ---- (2026) (No. 25-1083), 2025 WL 4688297, at \*16–26.

serious threat to U.S. interests," and Haiti "lacks a functioning central authority capable of maintaining or sharing" critical "law enforcement or security information," which "severely limit[s] the U.S. government's ability to screen and vet Haitians in the United States with Temporary Protected Status." *Id.* That "inability of the previous administration to reliably screen aliens from a country with limited law enforcement infrastructure and widespread gang activity presents a clear and growing threat to U.S. public safety." *Id.* at 54,738. Further, the Secretary found, extending Haiti's TPS designation does not "align with [the government's] foreign policy vision of a secure, sovereign, and self-reliant Haiti," rather than "a country that Haitian citizens continue to leave in large numbers to seek opportunities in the United States." *Id.*

Mot. 3–4.

Apart from inserting the words "and acute" in the first sentence, these assertions of supposedly irreparable injury are word-for-word identical to those made in the government's stay application to the Supreme Court. *Cf.* Stay App. at 33, *Trump v. Miot*, No. 25A999 (U.S. Mar. 11, 2026). The Supreme Court denied the government's application. It did so on June 30, after having decided *Doe*. The government identifies nothing that has changed since then.

The Supreme Court denied the government's request and this Court should too.

# CONCLUSION

The renewed motion to stay should be denied.

Respectfully submitted,

Dated: July 13, 2026

/s/ Andrew Tauber
Andrew E. Tauber

Geoffrey M. Pipoly
Bryan Cave Leighton Paisner, LLP
161 N. Clark Street, Suite 4300
Chicago, IL 60601
(312) 602-5000
geoff.pipoly@bclplaw.com

Andrew E. Tauber
Bryan Cave Leighton Paisner, LLP
1155 F Street N.W., Suite 700
Washington, DC 85004-4406
(202) 508-6111
andrew.tauber@bclplaw.com

Abby West
Bryan Cave Leighton Paisner, LLP
211 N. Broadway, Suite 3600
(314) 259-2597
St. Louis, MO 63102
abby.west@bclplaw.com

Jean-Claude André
Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, CA 90401-2386
(310) 576-2100
jc.andre@bclplaw.com

Raymond Audain
Giskan Solotaroff & Anderson LLP
1 Rockefeller Plaza, 8th Floor
New York, NY 10020
(646) 290-6249
raudain@gslawny.com

Ira J. Kurzban
Kevin Gregg
Kurzban, Kurzban, Tetzeli & Pratt, P.A.
131 Madeira Ave.
Coral Gables, FL 33134
(305) 444-0060
ira@kktplaw.com

Sejal Zota
Just Futures Law
1629 K Street N.W., Suite 300
Washington, DC 20006
(617) 812-2822
sejal@justfutureslaw.org

13

## CERTIFICATE OF COMPLIANCE

I certify that this document complies with: (1) the type-volume limit of Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 2,479 words; and (2) the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. 27(d)(1)(E) because the document has been prepared in double-spaced, proportionally spaced 14-point Century Schoolbook type.

Dated: July 13, 2026                     /s/ Andrew Tauber
                                         Andrew E. Tauber