No. 26-5050

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————

FRITZ EMMANUEL LESLY MIOT, *et al.*,
*Appellees,*

v.

DONALD J. TRUMP, *et al.*,
*Appellants.*

———————————

On Appeal from the U.S. District Court
for the District of Columbia
No. 1:25-cv-2471 (Reyes, J.)

———————————

## APPELLANTS' EMERGENCY MOTION
## FOR A STAY PENDING APPEAL
**(ruling or administrative stay requested by February 17, 2026)**

———————————

BRETT A. SHUMATE
*Assistant Attorney General*

YAAKOV M. ROTH
*Principal Deputy Assistant
Attorney General*

DREW C. ENSIGN
*Deputy Assistant Attorney
General*

SARAH WELCH
*Counsel to the Assistant
Attorney General*

JEANINE FERRIS PIRRO
United States Attorney

JOHNNY H. WALKER, III
Assistant United States Attorney

DHRUMAN Y. SAMPAT
Assistant United States Attorney
601 D Street NW
Washington, D.C. 20530
(202) 252-2525

# CERTIFICATES AS TO PARTIES, RULINGS, AND RELATED CASES

## A.    Parties and Amici

Plaintiffs are Fritz Emmanuel Lesly Miot; Rudolph Civil; Marlene Gail Noble; Marica Merline Laguerre; and Vilbrun Dorsainvil.

Defendants are Donald J. Trump, in his official capacity as the President of the United States; Kristi Noem, in her official capacity as Secretary of the U.S. Department of Homeland Security; and the Department of Homeland Security.

*Amici* in the district court were American Federation of Labor and Congress of Industrial Organizations, Service Employees International Union, American Federation of Teachers, United Food and Commercial Workers International Union, Unite Here, National Nurses United, IUE-CWA, International Union of Bricklayers and Allied Craftsworkers, Massachusetts, California, New York, Connecticut, Delaware, Hawaii, Illinois, Maine, Maryland, Michigan, Minnesota, New Jersey, Nevada, Oregon, Rhode Island, Vermont, Washington, the District of Columbia, and 91 members of Congress.

No intervenors participated in the district court.

No amici or intervenors have participated in the Court of Appeals as of this date.

**B.     Rulings Under Review**

The ruling under review is an opinion (Doc. 124) and order (Doc. 123) on a renewed motion for a stay under 5 U.S.C. § 705 and a motion to dismiss, which the district court issued on February 2, 2026.  The opinion and order are attached to this motion as Exhibits A and B.

**C.     Related Cases**

This case has not previously been before this Court.

# TABLE OF CONTENTS

INTRODUCTION ................................................................................. 1

STATEMENT ...................................................................................... 5

ARGUMENT ...................................................................................... 10

    I.    The government is likely to succeed on the merits. ............. 10

            A.    The district court lacked jurisdiction to stay the
                   Secretary's decision to terminate Haiti's TPS
                   designation. ................................................................. 10

            B.    The government is likely to prevail on the merits
                   of Plaintiffs' APA challenge. ....................................... 17

            C.    The government is likely to prevail on the merits
                   of Plaintiffs' equal-protection claim............................ 23

    II.    The equitable factors overwhelmingly favor a stay. ............ 27

CONCLUSION ..................................................................................... 29

# INTRODUCTION

Temporary Protected Status ("TPS") is meant to be temporary. Congress created TPS to provide temporary protection for foreign nationals due to "extraordinary and temporary conditions" when such protection is consistent with the "national interest of the United States." 8 U.S.C. §1254a(b)(1)(C).[1] To ensure TPS designations would not continue forever, Congress directed the Secretary of Homeland Security, "after consultation with appropriate agencies," to conduct a periodic review of whether TPS remains warranted. §1254a(b)(3)(B). If the foreign state "no longer continues to meet the conditions for designation," the Secretary "shall terminate the designation by publishing notice in the Federal Register." §1254a(b)(3)(B). That determination is final: "There is no judicial review of any determination" by the Secretary "with respect to" the "termination … of a designation" of a foreign state. §1254a(b)(5)(B).

Haiti has had a TPS designation since an earthquake in 2010. In 2025, the Secretary followed statutory protocol to determine if the time had come to terminate that designation. After consulting with the

_____

[1] Unless noted, all statutory citations are to Title 8.

Department of State and considering, among other things, foreign policy considerations, public safety concerns, and the economic and political situation in Haiti, the Secretary concluded that Haiti's TPS designation was no longer appropriate. So she published a notice in the Federal Register terminating Haiti's TPS and providing her reasons for doing so, effective February 3, 2026 (the "Termination").

That decision should have been final. But the district court held that the Termination likely violated the Administrative Procedure Act and likely violated the Fifth Amendment as motivated by "animus towards nonwhite foreigners." Op.70. So the court stayed the Termination under 5 U.S.C. §705 and required the government to continue to provide temporary protected status to 350,000 Haitian nationals. Op.4, 83.

In substantially similar TPS litigation, the Supreme Court has now twice stayed district courts' attempts to prevent the Executive Branch from terminating TPS designations. *Noem v. NTPSA*, 145 S. Ct. 2728 (2025); *Noem v. NTPSA*, 146 S. Ct. 23 (2025). The Supreme Court's stay orders involved substantially similar issues (the reviewability and lawfulness of a TPS termination), and this Court must follow those

informative decisions to resolve this substantially similar stay request. *See Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025); *NTPSA*, 146 S. Ct. at 23 (granting stay because "the parties' legal arguments and relative harms generally" remained unchanged). Presumably recognizing as much, the Ninth Circuit stayed another district court's postponement of three other TPS decisions. *NTPSA v. Noem*, No. 25-4901 (9th Cir. Aug. 20, 2025).

Despite those Supreme Court interventions, the district court relied on the same moves to circumvent the TPS statute's judicial-review bar. This Court should grant a stay pending appeal.

The government has a strong likelihood of success on the merits. Section 1254a(b)(5)(A) is clear and controlling here: no court can review "any determination" "with respect to" termination of TPS. The district court evaded that bar by reading it to apply only to the Secretary's final decision, not her process in reaching it—and then classifying virtually all APA challenges as "process" challenges. Op.20. That is invention, not interpretation. Arbitrary-and-capricious review of the termination is definitionally "judicial review of any determination" of the Secretary

"with respect to" "termination or extension of a designation," which the statute forbids. §1254a(b)(5)(A).

The district court's merits analysis is no better. As to the APA claim, the district court substituted its own judgment for the Secretary's. To grant Plaintiffs' motion, the district court quibbled with the Secretary's assessment of Haiti's economy, disagreed with the Secretary's view of conditions in Haiti, demanded that the Secretary consult some other (unnamed) "appropriate" agency in addition to the State Department, and challenged the Secretary's evaluation of whether the TPS designation is in the national interest. That sort of judicial second-guessing runs roughshod over the deferential APA standard of review, to say nothing of §1254a(b)(5)(A)'s jurisdictional bar.

The district court's equal-protection analysis is similarly faulty. In the immigration context, if the Executive Branch's determinations are reasonable and reasonably made—as the Secretary's determinations are here—courts look no further. In concluding otherwise, the district court relied on stray, out-of-time and -context remarks that are irrelevant and in any event not probative of any (non-existent) racial animus.

The remaining equitable factors also favor a stay. The district court's order prevents the Secretary from doing exactly what Congress commanded—review ongoing TPS designations and terminate those which are no longer appropriate. And it requires the government to continue to permit hundreds of thousands of aliens to remain in the United States, with work authorization, despite the Secretary's determination that their continued presence is contrary to the national interest. On the other side of the ledger, it is well established that removal, without more, is not an irreparable injury. Just as they did in *Noem v. NTPSA*, 145 S. Ct. at 2728-29, the equities strongly favor a stay here.

Under the statute Congress enacted and the judicial review Congress permitted, the district court should never have reached Plaintiffs' claims. Even once it did, the Secretary can (and did) reasonably and constitutionally decide to end Haiti's 16-year-old TPS designation. The Court should grant a stay pending appeal.

## STATEMENT

**A.** In 1990, Congress established a discretionary program for providing temporary shelter in the United States for aliens from

countries experiencing armed conflict, natural disaster, or other "extraordinary and temporary conditions" that prevent the aliens' safe return. §1254a(b)(1)(C). The Secretary may designate countries for TPS if she determines the statutory conditions for designation are met. §1254a(b). One such condition is that "there exist extraordinary and temporary conditions in the foreign state that prevent aliens who are nationals of the state from returning to the state in safety, unless the [Secretary] finds that permitting the aliens to remain temporarily in the United States is contrary to the national interest of the United States." §1254a(b)(1)(C). Covered aliens may receive work authorization and cannot be removed. §1254a(a).

Designations are "temporary"—by statute, initial designations, and any extensions thereof, may not exceed eighteen months. §1254a(b)(2), (3)(C). The Secretary, "after consultation with appropriate agencies," must review each designation at least 60 days before the designation ends to determine "whether the conditions for such designation … continue to be met." §1254a(b)(3)(A). And if she determines that the foreign state "no longer continues to meet the conditions for designation," she "shall terminate the designation by publishing notice in the Federal

Register of [her] determination," including "the basis for the determination." §1254a(b)(3)(B).

Judicial review of those determinations is categorically barred: "There is no judicial review of any determination of the [Secretary] with respect to the designation, or termination or extension of a designation, of a foreign state under this subsection." §1254a(b)(5)(A).

**B.** Haiti has been designated for TPS since 2010. At first, Haiti was designated for TPS based on "extraordinary and temporary conditions" stemming from a major earthquake. 75 FR 3476, 3477 (Jan. 21, 2010). The first Trump Administration attempted to terminate the designation in 2018, only for a district court to enjoin the termination and DHS to withdraw the appeal in late 2021. *See Saget v. Trump*, No. 18-cv-1599 (E.D.N.Y. Oct. 5, 2021), ECF No. 164.

Most recently, Haiti was designated for TPS in 2021 because of "extraordinary and temporary conditions" following a presidential assassination and based on "a deteriorating political crisis, violence, and a staggering increase in human rights abuses." 86 FR 41,863, 41,864 (Aug. 3, 2021). Then-Secretary Mayorkas twice extended this designation. *See* 88 FR 5022 (Jan. 26, 2023); 89 FR 54,484 (July 1, 2024).

In November 2025, Secretary Noem published the challenged notice in the Federal Register, announcing that Haiti's TPS designation would be terminated, effective February 3, 2026 (the day the extension was to expire). 90 FR 54,733 (Nov. 28, 2025). That notice followed the procedures set out in the TPS statute to a tee. The Secretary, "after consulting with appropriate U.S. Government agencies," "reviewed country conditions in Haiti." *Id.* at 54,735. She considered "whether extraordinary and temporary conditions in Haiti that prevent" safe return "continued to exist," and whether permitting Haitian nationals to remain temporarily in the United States was "contrary to the national interest." *Id.* And she did so "at least 60 days" before the expiration of the designation. *Id.* at 54,733.

Based on that review, the Secretary "determined that there are no extraordinary and temporary conditions" preventing safe return to Haiti. *Id.* at 54,735. The Secretary acknowledged that some conditions "remain concerning"—for instance, gang violence. *Id.* But the Secretary noted that the "data … indicate parts of the country are suitable to return to," that a new Gang Suppression Force would help to provide security, and that Haiti's GDP is projected to grow—all "positive developments"

supporting the Secretary's ultimate determination. *Id.*

The Secretary also concluded that "even if" extraordinary and temporary conditions persisted in Haiti, "termination of [TPS] for Haiti is still required because it is contrary to the national interest to permit Haitian nationals … to remain temporarily in the United States." *Id.* In particular, the Secretary found that Haiti generally lacked "sufficient availability and dissemination of law enforcement information" to vet its nationals, that aliens "who overstay nonimmigrant visas can place an added strain" on public resources and job markets, and that foreign policy considerations support terminating Haiti's TPS designation as a "vote of confidence" in the country. *Id.* at 54,736-37.

**C.**     On December 5, 2025, Plaintiffs—five Haitian TPS holders— filed an amended class action complaint, alleging that the Termination violates the Administrative Procedure Act and equal protection. *See generally* Doc. 74.

Plaintiffs moved to stay the Termination pursuant to 5 U.S.C. §705, while the government moved to dismiss the complaint. Docs. 80, 81. On February 2, the district court granted the requested stay, denied the

government's motion, and stayed consideration of Plaintiffs' motion to certify a class. Op.83.

The government requested a stay on February 5. Instead of ruling promptly, the district court scheduled a hearing for February 12, and in the meantime demanded that a senior DHS official provide sworn testimony to support the claim of irreparable harm that the Supreme Court has already twice accepted. Feb. 6 Minute Order. The government will advise this Court if and when the district court rules.

## ARGUMENT

A stay pending appeal turns on "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 426 (2009).  Each factor weighs heavily in favor of a stay.

## I.   The government is likely to succeed on the merits.

### A.   The district court lacked jurisdiction to stay the Secretary's decision to terminate Haiti's TPS designation.

At the threshold, the government is likely to succeed on the merits

because the district court lacked jurisdiction to hear this case. The TPS statute provides that "[t]here is no judicial review of any determination of the [Secretary] with respect to the designation, or termination or extension of a designation, of a foreign state" for TPS. §1254a(b)(5)(A). It therefore unambiguously precludes courts from second-guessing the TPS determinations. §1254a(b)(5)(A).

This judicial-review bar is broad. *First*, Congress prefaced "determination" with the modifier "any," which "has an expansive meaning." *Patel v. Garland*, 596 U.S. 328, 338 (2022) (cleaned up). The provision thus captures determinations "of whatever kind." *Id*. *Second*, the phrase "with respect to" has "a broadening effect," as it "ensur[es] that the scope of [the] provision covers not only its subject but also matters relating to that subject." *Id*. at 339. When Congress has stripped a court of jurisdiction "in respect to" certain claims, the Supreme Court has construed that as a "broad prohibition." *United States v. Tohono O'odham Nation*, 563 U.S. 307, 312 (2011). The TPS statute thus plainly commits to the Secretary's unreviewable authority any determinations relating to any TPS termination. *Id*.

Reinforcing this interpretation, "the Government's political departments [are] largely immune from judicial control" in the immigration context, *Fiallo v. Bell*, 430 U.S. 787, 792 (1977), particularly when making the sensitive foreign policy judgments at issue here. The Executive had long exercised inherent authority to afford temporary immigration status based on its assessment of conditions in foreign states, even before there was any "specific statutory authority" for such relief. *Hotel & Rest. Emps. Union, Loc. 25 v. Smith*, 846 F.2d 1499, 1510 (D.C. Cir. 1988). That authority included the discretion "not to extend [protected] status" to a particular class of aliens, and this Court had recognized that such decisions were "unreviewable." *Id.* Congress legislated against that backdrop when it enacted the TPS statute and codified the principle that "[t]here is no judicial review" of such determinations. §1254a(b)(5)(A).

Plaintiffs' claims fall squarely within §1254a(b)(5)(A)'s prohibition on judicial review. They attack the explanation for the Termination as "implausible" and "contrary to the evidence," paint the decision as "predetermined," and bicker with the Secretary's assessment of conditions in Haiti and the national interest, Doc.81 at 32-45—all to ask

the district court to ultimately set aside the Termination as unlawful. That is a challenge to "determination[s] … with respect to the … termination" of Haiti's TPS designation. §1254a(b)(5)(A). There is "no judicial review" available for Plaintiffs. *Id.*

The district court concluded otherwise, reasoning that "determination" refers only to the Secretary's "single act" of "designating, terminating, or extending TPS," and that the bar thus permits courts to probe the Secretary's "group of decisions," "practice," and "procedure" in reaching her determination. Op.20-21. Such sweeping review has no basis in text or precedent, would eviscerate the judicial-review bar, and would not permit the district court's review in this case in any event.

Start with text. Nothing in the TPS statute distinguishes between substantive or procedural review. Instead, it bars *any* review of "*any* determination" with respect to a TPS "termination." §1254a(b)(5)(A). The word "determination" is a "term[] of everyday usage," *EPA v. Calumet Shreveport Refin., L.L.C.*, 605 U.S. 627, 643 (2025), and means—simply— "[t]he decision arrived at or promulgated," 4 Oxford English Dictionary 548 (2d ed. 1989) (cited approvingly in *Calumet*, 605 U.S. at 643). When

the Secretary decides on "practice" or "procedure" as it relates to terminating a TPS designation, she makes a "determination."

Precedent provides no reason to depart from that commonsense conclusion. The district court divined its "single act" rule from cases like *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479 (1991), and *Reno v. Catholic Social Services, Inc.*, 509 U.S. 43 (1993). Those cases considered other INA provisions barring judicial review of "a determination respecting an application for adjustment of status." *McNary*, 498 U.S. at 492 (construing §1160(e)(1)); *Reno*, 509 U.S. at 56 (construing §1255a(f)(1)). Because the statutes referenced "*a* determination" and "*an* application," *McNary* and *Reno* held that judicial review was barred for "*individual* application[s]" but not for the agency's allegedly unlawful practices, which could be challenged "without referring to … the denial of any individual application." *McNary*, 498 U.S. at 492; *Reno* U.S. at 56.

*McNary* and *Reno* did not purport to define "determination" for all intents and purposes, as that term must be read "in [it]s context and with a view to [its] place in the overall statutory scheme." *Calumet*, 605 U.S. at 643. Indeed, *McNary* itself emphasized that Congress *could* bar judicial review of collateral challenges if it used more expansive

language. 498 U.S. at 494. Congress did so here: barring any "statutory or nonstatutory" challenge to "*any determination* of the [Secretary] *with respect to* the determination, or *termination* or extension of a designation" of TPS. §§1252(a)(5), 1254a(b)(5)(A) (emphasis added). And even if *McNary* or *Reno* were analogous to this statute, that would provide no support for Plaintiffs' claims, which—unlike the plaintiffs in those cases—do not challenge any collateral agency policy or practice. The *McNary* and *Reno* plaintiffs were able to bring their challenges "without referring to … the denial of any individual application." 509 U.S. at 56. Plaintiffs here, by contrast, do not merely *refer* to the Termination; they challenge the country-specific determinations and would *set aside* that termination if they succeed.

At minimum, §1254a(b)(5)(A) bars the arbitrary-and-capricious claims on which the Court granted judgment for Plaintiffs. Op.48-63. "'[I]f a no-review provision shields particular types of administrative action, a court may not inquire whether a challenged agency decision is arbitrary, capricious, *or procedurally defective.*'" *Amgen Inc. v. Smith*, 357 F.3d 103, 113 (D.C. Cir. 2004) (emphasis added); *see also Fla. Health Scis. Ctr., Inc. v. Sec'y of HHS*, 830 F.3d 515, 519 (D.C. Cir. 2016) (courts may

"not review a decision that [is] 'indispensable' or 'integral' to, or 'inextricably intertwined' with, the unreviewable agency action"); *Skagit Cnty. Pub. Hosp. Dist. No. 2 v. Shalala*, 80 F.3d 379, 386 (9th Cir. 1996) (preclusion provision applies when "procedure is challenged only in order to reverse the individual [unreviewable] decision"). To hold otherwise "would eviscerate the statutory bar, for almost any challenge to [a determination] could be recast as a challenge to its underlying methodology." *DCH Reg'l Med. Ctr. v. Azar*, 925 F.3d 503, 505-507 (D.C. Cir. 2019); *see Yale New Haven Hosp. v. Becerra,* 56 F.4th 9, 18 (2d Cir. 2022) (agreeing with *DCH Reg'l Med. Ctr.*, 925 F.3d at 506-7); *see also U.S. Anesthesia Partners of Texas, P.A. v. U.S.P.H.S.*, 126 F.4th 1057, 1064 n.2 (5th Cir. 2025).

This suit is a case in point. The district court purported to review only "process," not the Secretary's decision. Op.20. But over 16 pages, the court castigated the Secretary's termination decision because it disagreed with the Secretary's assessment of present and predicted conditions in Haiti, Op.49-58; and challenged the Secretary's national-interest findings because of the court's economic views, Op.62. And after debating the Secretary on her view of the data, the court concluded that the

Termination was likely "irrational." Op.62; *contra Fla. Health Scis. Ctr.*, 830 F.3d at 519 (when a statute bars review of a determination, it also bars review of the choice of data used to make that determination). And the district court did not review anything that could be described as a collateral policy or practice, instead assessing *this* specific decision based on the decision's own administrative record. That is exactly the decision-specific second-guessing that the judicial-review bar forbids even on a narrow reading.

In short, a stay should issue because §1254a(b)(5)(A) plainly precludes Plaintiffs' APA challenges.

## B. The government is likely to prevail on the merits of Plaintiffs' APA challenge.

Because judicial review of Plaintiffs' claims is barred, the government has necessarily shown a likelihood of success. Regardless, Plaintiffs' APA claims also fail on the merits.

First, Plaintiffs lack an APA cause of action to challenge the Secretary's assessment of the "national interest of the United States," §1254a(b)(1)(C), because that assessment is "committed to agency discretion by law," 5 U.S.C. §701(a)(2). That is exactly the sort of action which admits of no judicially manageable standards. *See Detroit Int'l*

*Bridge Co. v. Gov't of Canada*, 883 F.3d 895, 903-04 (D.C. Cir. 2018) (agency action pursuant to a directive to "serve the national interest" is not judicially reviewable). Because the national interest assessment is an independently sufficient basis for the Termination, 90 FR 54,735, and Plaintiffs cannot challenge it, their claims fail.

Second, Plaintiffs' claims fail because the Termination complied with the APA's commands. Courts review agency action to determine if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §706(2)(A). That standard "requires that agency action be reasonable and reasonably explained." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). It is a "highly deferential standard of review," *IARA v. Gonzales*, 477 F.3d 728, 732 (D.C. Cir. 2007), and in applying it "a court may not substitute its own policy judgment for that of the agency," *Prometheus Radio Project*, 592 U.S. at 423.

The Termination met the TPS statute's requirements. The Secretary reviewed "whether the conditions for [Haiti's] designation" "continue to be met." §1254a(b)(3)(A). She did so "after consultation with appropriate agencies," *id.*—here, the State Department. And she

published a notice that included the basis for her determination that Haiti "no longer meets the conditions for designation." §1254a(b)(3)(B).

The Termination was also "reasonable and reasonably explained." *Prometheus Radio Project*, 592 U.S. at 423. The Secretary considered "whether extraordinary and temporary conditions in Haiti" prevented the safe return of Haitian nationals to that country and whether "permitting Haitian nationals to remain temporarily in the United States was contrary to the national interest" and determined that both favored termination. 90 FR 54,735. She considered "data … indicat[ing] parts of the country are suitable to return to"; signs that the Haitian government would more effectively combat gang violence; and projections that the Haitian economy would grow in the near future. *Id.* As to national interest, she considered limitations on the ability to adequately vet Haitian nationals, the "added strain" TPS holders can place on public resources and "an already limited job market," and foreign policy needs. *Id.* at 54,736-38.

Those determinations were not arbitrary and capricious. The district court viewed Haiti as "a nation deep in crisis" and disputed the Secretary's assessment of the efficacy of Haiti's efforts to combat gang

violence and prediction of economic growth. Op.49, 57. But the relevant question is not whether Haiti is a pleasant place to live; it is whether "extraordinary and temporary conditions" prevent safe return. And no court may "reject reasonable findings and conclusions" by the Secretary on that front merely because it "would have weighed the evidence differently." *Cumberland Coal Res., LP v. Fed. Mine Safety & Health Rev. Comm'n*, 717 F.3d 1020, 1028 (D.C. Cir. 2013). Especially so here, given the "wide berth" agencies are afforded "when making predictive judgments." *Bd. of Cnty. Comm'rs of Wash. Cnty. v. U.S. DOT*, 955 F.3d 96, 99 (D.C. Cir. 2020). The Secretary acknowledged that "[c]ertain conditions in Haiti remain concerning," but found that other considerations weighed in favor of termination. 90 FR 54,735. That determination was well within her discretion.

The Secretary's termination rationale also rested on an independently sufficient basis: the conclusion that the national interest favored termination. The district court's criticism of that national-interest determination is similarly misguided. The district court accused the Secretary of "fail[ing] to focus on Haitian TPS holders." Op.61. But Secretary's consideration of Haitian TPS holders can "reasonably be

discerned," *Garland v. Ming Dai*, 593 U.S. 357, 369 (2021); she noted that the Haitian government lacks "information necessary" to vet its nationals, and that aliens who overstay visas can "place an added strain on local communities," 90 FR 54,735. Both of those considerations obviously apply to Haitian TPS holders.[2] The district court also faulted the Secretary for "fail[ing] to consider the impact Haitian TPS holders have on [the] economy," such as by paying taxes and starting businesses. Op.62. But the Secretary's recognition that the "national interest" is an "expansive standard" is no invitation for the district court to wage a battle of white papers. 90 FR 54,735. Quite the opposite—"questions of foreign policy and national interest are not subjects fit for judicial involvement," *see Det. Int'l*, 883 F.3d at 903, and the district court's second-guessing of the Secretary's determinations here takes it far outside the statute and the judicial role.

Nor was the Termination contrary to law. The district court

---

[2] The district court thought that consideration of individuals who overstay visas was irrelevant because "Haitian TPS holders are not in this category." Op.54 n.26. That is incorrect. Aliens who overstay visas are eligible for, and receive, TPS. *See, e.g.*, *Melendez v. McAleenan*, 928 F.3d 425, 426 (5th Cir. 2019) (recounting grant of TPS to alien who overstayed his visa).

reproached the Secretary for considering predictions at all, holding that the TPS statute forbids her from doing so. Op.58. There is no basis for that limitation. What Haiti will look like tomorrow is obviously a "condition" that affects whether an alien can "return[]" there "in safety." *Id.* §1254a(b)(1)(C). The district court was also wrong that the Secretary's consultation of the State Department was somehow not a "consultation with appropriate agencies." Op.41-46 (quoting §1254a(b)(3)(A)). Courts are "not free to impose additional judge-made procedural requirements on agencies" beyond what a statute demands. *Ming Dai*, 593 U.S. at 358. Nothing in the TPS statute requires the Secretary to send two emails instead of one, or to contact multiple agencies when she determined that the State Department alone was "appropriate."

Finally, the district court's holding that the Termination was unlawfully "pre-ordained"—whether as an individual decision or as a "pattern or practice"—falls with the rest. Op.46-48, 63-64. The district court concluded that the Termination must have been pre-ordained because it is irrational. Op.63. Faulty logic aside, as already explained, the Termination is reasonable and reasonably explained. And there is no requirement that an agency have an "open-minded attitude" in

considering an action. *Little Sisters of the Poor v. Pennsylvania*, 591 U.S. 657, 685 (2020). If an agency complies with "the APA's objective criteria," courts may not "rebuke[]" agencies for "purported attitudinal deficiencies." *Id.* at 674, 685. And there is nothing to the court's extrapolation of a "pattern and practice" of terminating TPS designations. Op.46-48. Each is a separate action with a distinct record. At most, consistent decisionmaking could point to the new Administration's priorities and evaluation of what constitutes an "extraordinary" circumstance or a "temporary" form of relief. Such "[a] change in administration" is "a perfectly reasonable basis for an executive agency's reappraisal" of how it implements its programs. *Nat'l Ass'n of Home Builders v. EPA*, 682 F.3d 1032, 1043 (D.C. Cir. 2012) (citation omitted); *Department of Commerce v. New York*, 588 U.S. 752, 781 (2019).

In sum, the government is likely to prevail on the APA merits.

## C. The government is likely to prevail on the merits of Plaintiffs' equal-protection claim.

The government is also like to succeed on Plaintiffs' equal-protection claim. Under *Trump v. Hawaii*, Executive Branch immigration policies that "implicate 'relations with foreign powers,' or involve 'classifications

… defined in the light of changing political and economic circumstances,'" which are judgments "'frequently of a character more appropriate to either the Legislature or the Executive,'" need only satisfy rational-basis review, and accordingly pass constitutional muster so long as they are "plausibly related" to the government's policy objective. 585 U.S. 667, 702, 704 (2018) (citation omitted). In conducting that deferential review, courts may not look behind facially legitimate actions to hunt for illicit purposes. *Id.* at 704-05.

The *Hawaii* standard applies here. TPS actions necessarily entail unique country-specific determinations that both "implicate 'relations with foreign powers'" and "involve 'classifications defined in the light of changing political and economic circumstances.'" *Id.* at 702 (citation and alteration omitted). And, under *Hawaii*, the Termination is straightforwardly constitutional. The Secretary consulted with the State Department and concluded that the conditions for Haiti's TPS designation were no longer met, based on both country conditions and the national interest. 90 FR 54,733. Those determinations are rational and related to the government's legitimate interests in immigration, national security, and foreign policy. *Id.*

Plaintiffs' equal-protection claim would fail even under the more searching standard in *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 265-66 (1977). Plaintiffs must prove a racially "discriminatory purpose [was] a motivating factor in the [government's] decision," which they cannot do through cherry-picked statements taken out of context and without any direct link to the Secretary's determinations. *See DHS v. Regents of Univ. of Cal.*, 591 U.S. 1, 34-35 (2020).

The statements on which the district court relied are wholly insufficient to show any discriminatory purpose. The district court cherry-picked quotes from the Secretary and the President where they advocated for and promoted policies that curb immigration and decrease crime to suggest discriminatory motives underlie the Termination. Op.67-72. But many of those statements were "remote in time and made in unrelated contexts," and therefore "do not qualify as 'contemporary statements' probative of the decision at issue." *Regents*, 591 U.S. at 35. Some statements arose during the campaign trail—just like the statements *Hawaii* rejected. Others date from the first Trump Administration—the same administration which *extended* TPS designations for Somalia, South

Sudan, Syria, and Yemen. 82 FR 44,205-01 (Sept. 21, 2017); 83 FR 9329-02 (Mar. 5, 2018); 83 FR 40,307-01 (Aug. 14, 2018); 83 FR 43,695 (Aug. 27, 2018). And none reflects racial or national-origin animus. The only references to race are the district court's own editorializing labels of "nonwhite foreigners" and "predominantly nonwhite" countries. Op.69-70. And the Secretary's disapproval of immigration from countries that pose security or economic threats does nothing to show racial animus.

Additionally, President Trump's statements could not show animus by *the Secretary* regardless. *See, e.g.*, *Staub v. Proctor Hospital*, 562 U.S. 411, 418 (2011). The district court's "cat's paw" approach would invite judicial second-guessing of an agency official's actions based on mere allegations that some other government official harbored some discriminatory motive. That would open the door to impermissible intrusion on privileged Executive Branch deliberations, *see United States v. Nixon*, 418 U.S. 683, 708 (1974), and litigant-driven discovery that would disrupt the President's execution of the laws, *see Nixon v. Fitzgerald*, 457 U.S. 731, 749-50 (1982).

Because the Secretary's actions were plainly based on her view of country conditions and the national interest, not on animus, respondents'

equal-protection challenge fails.

## II. The equitable factors overwhelmingly favor a stay.

The remaining factors favor a stay, too. *Nken*, 556 U.S. at 435. As the Supreme Court necessarily concluded—twice—in an analogous case, the government and public share an interest in adherence to the process established by Congress, under which the Secretary has unreviewable authority over TPS designations. *NTPSA*, 145 S. Ct. at 2728-29; *NTPSA*, 146 S. Ct. at 24; *see Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers).

The district court's decision represents "an improper intrusion by a federal court into the workings of a coordinate branch of the Government." *INS v. Legalization Assistance Project*, 510 U.S. 1301, 1305-06 (1993) (O'Connor, J., in chambers). Especially so here, in a context that implicates "a fundamental sovereign attribute exercised by the Government's political departments[,] largely immune from judicial control." *Fiallo*, 430 U.S. at 792. Setting aside the Termination overrides the Secretary's considered judgment on a matter of foreign affairs and requires the United States to continue to permit hundreds of thousands of foreign nationals to remain within its borders. That alone establishes

the requisite irreparable harm. And that harm is particularly pronounced here, where the Secretary has concluded that maintaining Haiti's TPS designation is contrary to the national interest.

Plaintiffs maintain that Termination could lead to the loss of employment or health benefits, possible removal, and family separation following future removal proceedings. But the end of TPS's inherently *temporary* protection is not equivalent to a final removal order, and the loss of associated benefits is inherent in the temporary status Congress crafted. Moreover, "removal alone cannot constitute the requisite irreparable injury" to justify a stay. *Nken*, 556 U.S. at 435. As the Supreme Court twice concluded, the equities favor the government.

*    *    *

## CONCLUSION

The Court should grant a stay pending appeal.

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

YAAKOV M. ROTH
*Principal Deputy Assistant Attorney General*

DREW C. ENSIGN
*Deputy Assistant Attorney General*

SARAH WELCH
*Counsel to the Assistant Attorney General*

JEANINE FERRIS PIRRO
United States Attorney

JOHNNY H. WALKER, III
Assistant United States Attorney

Dated: February 6, 2026

*s/ Dhruman Y. Sampat*
DHRUMAN Y. SAMPAT
Assistant United States Attorney
601 D Street NW
Washington, D.C. 20530
(202) 252-2525

# CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 27(d)(1), I certify that the text of this motion is in double-spaced, proportionally spaced 14-point Century Schoolbook type, and the motion is 5,197 words in compliance with Fed. R. App. P. 27(d)(2)(A).

*/s/ Dhruman Y. Sampat*
DHRUMAN Y. SAMPAT
Assistant United States Attorney

Dated:  February 6, 2026          Attorney for Appellants

**CERTIFICATE OF SERVICE**

I hereby certify that on February 6, 2026, counsel for Appellants electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the D.C. Circuit by using the ACMS system and that service will be accomplished via the ACMS system.

_/s/ Dhruman Y. Sampat_
DHRUMAN Y. SAMPAT
Assistant United States Attorney

Dated:  February 6, 2026          Attorney for Appellants

**EXHIBITS**

Exhibit A.....................................  District Court Opinion (Doc. 124)

Exhibit B.....................................  District Court Order (Doc. 123)