No. 26-5050

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLOMBIA CIRCUIT

**FRITZ EMMANUEL LESLY MIOT,** *et al.*,
Appellees,

**v.**

**DONALD J. TRUMP,** *et al.*,
Appellants.

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA, No. 1:25-cv-2471 (Reyes, J.)

## BRIEF OF FEDERATION FOR AMERICAN IMMIGRATION REFORM AS *AMICUS CURIAE* IN SUPPORT OF APPELLANTS

CHRISTOPHER J. HAJEC
MATT A. CRAPO
Federation for American Immigration Reform
25 Massachusetts Ave., NW, Suite 330
Washington, DC 20001
Telephone: (202) 387-3447
chajec@fairus.org
mcrapo@fairus.org

Attorneys for *Amicus Curiae*
Federation for American Immigration Reform

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, *amicus curiae* Federation for American Immigration Reform makes the following disclosures:

1) For non-governmental corporate parties please list all parent corporations: None.

2) For non-governmental corporate parties please list all publicly held companies that hold 10% or more of the party's stock: None.

3) The following entity has an interest in the outcome of this case: Federation for American Immigration Reform.

/s/ Christopher J. Hajec

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................i

TABLE OF AUTHORITIES ................................................................ iii

INTEREST OF *AMICUS CURIAE*...............................................................1

SUMMARY OF ARGUMENT .......................................................................1

ARGUMENT ...................................................................................2

    I.      Secretary Noem's TPS termination decision was an exercise of presidential authority and is therefore unreviewable under the APA ............4

    II.    This Court should harmonize the TPS statute with the President's inherent constitutional authority .................................................7

CONCLUSION..................................................................................8

# TABLE OF AUTHORITIES

*Chicago & Southern Air Lines, Inc. v. Waterman S.S. Corp.*,
  333 U.S. 103 (1948)................................................................3

*Crowell v. Benson*,
  285 U. S. 22 (1932)................................................................7

*Dalton v. Specter,*
  511 U.S. 462 (1994)..............................................................5, 6

*Detroit Int'l Bridge Co. v. Gov't of Canada*,
  883 F.3d 895 (D.C. Cir. 2018).............................................6

*Detroit Int'l Bridge Co. v. Gov't of Can.,*
  189 F. Supp. 3d 85 (D.D.C. 2016)........................................6

*Franklin v. Massachusetts*,
  505 U.S. 788 (1992)..............................................................6

*Harisiades v. Shaughnessy*,
  342 U.S. 580 (1952)..............................................................3

*Hernandez v. Mesa*,
  589 U.S 93 (2020)..................................................................2

*Jennings v. Rodriguez*,
  583 U.S. 281 (2018)..............................................................7

*Nishimura Ekiu v. United States*,
  142 U.S. 651 (1892)..............................................................2

*Trump v. Hawaii*,
  585 U.S. 667 (2018)..............................................................3

*Tulare Cty. v. Bush,*
  185 F. Supp. 2d 18 (D.D.C. 2001).......................................6

*United States ex rel. Knauff v. Shaughnessy*,
   338 U.S. 537 (1950) ..................................................................................3

*United States v. Hansen*,
   599 U.S. 762 (2023) ..................................................................................7

*United States v. Melgar-Diaz*,
   2 F.4th 1263 (9th Cir. 2021) ....................................................................3

**STATUTES**

8 U.S.C. § 1182 ............................................................................................4

8 U.S.C. § 1254a ..........................................................................................4

**OTHER AUTHORITIES**

Executive Order 14159, "Protecting the American People Against Invasion,"
   90 Fed. Reg. 8443 (Jan. 29, 2025) ..........................................................4

Termination of the Designation of Haiti for Temporary Protected Status,
   90 Fed. Reg. 54733 (Nov. 28, 2025)........................................................5

## INTEREST OF *AMICUS CURIAE*[1]

*Amicus curiae* Federation for American Immigration Reform (FAIR) is a nonprofit corporation and membership organization that was founded in 1979 and has its principal place of business in Washington, D.C. FAIR's mission is to advocate for immigration policy that is in America's best interest. FAIR has been involved in more than 100 legal cases since 1980, either as a party or amicus curiae, with the aim of advancing this mission.

## SUMMARY OF ARGUMENT

The district court's order granting summary judgment for the Plaintiffs conflicts with both the text of the Temporary Protective Status (TPS) statute and the President's constitutional authority. Secretary Noem's termination of TPS for citizens of Haiti was not only permitted under the TPS statute but was an exercise of inherent Executive power under Article II of the Constitution. Indeed, because Secretary Noem's action was at the behest of the President, it is unreviewable under the Administrative Procedure Act (APA).

The district court's conclusion that it may review "*how* the Secretary went about making her determination," Op. at 20 (emphasis in original), intrudes on the

---

[1] No counsel for a party in this case authored this brief in whole or in part, and no such counsel or party made a monetary contribution intended to fund the preparation of this brief. No person other than *amicus curiae*, its members, or its counsel made a monetary contribution to the preparation or submission of this brief.

President's inherent authority, in overseeing foreign affairs, to exclude aliens from the United States.

Additionally, the plain text of the TPS statute deprives courts of judicial review of such decisions. Accordingly, whether viewed as an exercise of inherent presidential authority or as an exercise of delegated power under the TPS statute, the district court erred in subjecting Secretary Noem's termination determination to judicial review. This Court should reverse the district court's order granting a stay of Secretary Noem's termination decision.

## ARGUMENT

There is no question that the United States has a right inherent in its sovereignty to defend itself from foreign dangers by controlling the admission of aliens. "It is an accepted maxim of international law that every sovereign nation has the power, as inherent in sovereignty, and essential to self-preservation, to forbid the entrance of foreigners within its dominions, or to admit them only in such cases and upon such conditions as it may see fit to prescribe." *Nishimura Ekiu v. United States*, 142 U.S. 651, 659 (1892). The President's authority over immigration and naturalization stems from his constitutional authority to superintend foreign relations and protect national security. *See, e.g.*, *Hernandez v. Mesa*, 589 U.S 93, 103-04 (2020) (declining to create a new *Bivens* remedy for the behavior of border patrol because it is a matter "relating to the conduct of foreign

relations" and the Executive Branch "has the lead role in foreign policy"), *Trump v. Hawaii*, 585 U.S. 667, 702 (2018) (acknowledging that immigration related decisions "implicate relations with foreign powers or involve classifications defined in the light of changing political and economic circumstances"); *Harisiades v. Shaughnessy*, 342 U.S. 580, 588-589 (1952) ("[A]ny policy toward aliens is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations, the war power, and the maintenance of republican form of government"); *Chicago & Southern Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 109 (1948) ("The President . . . possesses in his own right certain powers conferred by the Constitution on him as Commander-in-Chief and as the Nation's organ in foreign affairs"); *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542-43 (1950) ("The exclusion of aliens is a fundamental act of sovereignty . . . inherent in [both Congress and] the executive department of the sovereign"); see also *id.* at 542 ("When Congress prescribes a procedure concerning the admissibility of aliens, it is not dealing alone with a legislative power. It is implementing *an inherent executive power*.") (emphasis added); *United States v. Melgar-Diaz*, 2 F.4th 1263,1268 (9th Cir. 2021) (holding that the exclusion of aliens is a "fundamental act of sovereignty" and is "inherent in the executive power.").

Indeed, Congress has acknowledged the President's inherent authority to exclude aliens in the nation's interest. *See* 8 U.S.C. § 1182(f) (implementing the President's authority, in the interests of the United States, to "suspend the entry of all aliens or any class of aliens" or "impose on the entry of aliens any restrictions he may deem to be appropriate"). Granted the President's inherent constitutional power, as Commander-in-Chief, to exclude aliens, it is far from a nullity even if exercised outside of the precise form of its implementation by Congress in 8 U.S.C. § 1182(f).

I.   **Secretary Noem's TPS termination decision was an exercise of presidential authority and is therefore unreviewable under the APA**

On January 20, 2025, in exercise not only of his supervisory powers over the Executive Branch, but of his power to exclude aliens committed to him by the Constitution, President Trump directed Secretary Noem to "rescind the policy decisions of the previous administration that led to the increased or continued presence of illegal aliens in the United States," including "ensuring that designations of Temporary Protected Status are consistent with the provisions of section 244 of the INA (8 U.S.C. § 1254a), and that such designations are appropriately *limited in scope* and *made for only so long as may be necessary* to fulfill the textual requirements of that statute." Executive Order 14159 at § 16, "Protecting the American People Against Invasion," 90 Fed. Reg. 8443, 8446 (Jan. 29, 2025) (emphasis added).

4

Because Presidents must always act through subordinates, whether an action is that of the President or the head of an agency, for purposes of APA reviewability, hinges not on whether agency personnel help perform a given action, but on whether the authority to take that action is entrusted to the President, whether by statute or in the Constitution, or delegated by Congress to an agency. *See, a fortiori, Dalton v. Specter,* 511 U.S. 462, 477 (1994) ("Where a statute … commits decisionmaking to the discretion of the President, judicial review of the President's decision is not available."). Here, Secretary Noem terminated Haiti's TPS status pursuant, at least in part, to the President's executive order. *See Termination of the Designation of Haiti for Temporary Protected Status*, 90 Fed. Reg. 54733, 54736 (Nov. 28, 2025) (citing Executive Order 14159 and the importance of national security and public safety in support of the termination decision). As the U.S. District Court for the District of Columbia has explained:

> [A]n unreviewable presidential action must involve the exercise of discretionary authority vested in the President; an agency acting on behalf of the President is not sufficient by itself. Since the Constitution vests the powers of the Executive Branch in one unitary chief executive officer, *i.e.*, the President, an agency always acts on behalf of the President. Nonetheless, there is a difference between actions involving discretionary authority delegated by Congress to the President and actions involving authority delegated by Congress to an agency. Courts lack jurisdiction to review an APA challenge in the former circumstances, regardless of whether the President or the agency takes the final action. However, "[w]hen the challenge is to an action delegated to an agency head but directed by the President, a different situation obtains: then, the President effectively has stepped into the shoes of an agency head, and the review provisions

usually applicable to that agency's action should govern." Elena Kagan, *Presidential Administration*, 114 Harv. L. Rev. 2245, 2351 (2001).

*Detroit Int'l Bridge Co. v. Gov't of Can.,* 189 F. Supp. 3d 85, 101-04 (D.D.C. 2016). *See also, Franklin v. Massachusetts*, 505 U.S. 788, 800-801 (1992) ("The President is not explicitly excluded from the APA's purview, but he is not explicitly included, either. Out of respect for the separation of powers and the unique constitutional position of the President, we find that textual silence is not enough to subject the President to the provisions of the APA."); *Detroit Int'l Bridge Co. v. Gov't of Canada*, 883 F.3d 895, 903 (D.C. Cir. 2018) (holding that the court lacks a standard of review "[i]n the foreign affairs arena"); *Tulare Cty. v. Bush,* 185 F. Supp. 2d 18, 28 (D.D.C. 2001) ("A court has subject-matter jurisdiction to review an agency action under the APA only when a final agency action exists. Because the President is not a federal agency within the meaning of the APA, presidential actions are not subject to review pursuant to the APA.") (citing *Dalton,* 511 U.S. at 470) (other internal citations omitted).

It is, of course, not to the prejudice of the unreviewability of the Secretary's action that it was pursuant to an order that the President had inherent constitutional authority to issue. Obviously, if actions committed to the President's discretion by a statute are unreviewable under the APA, actions he takes pursuant to his authority under the Constitution are at least equally so.

Here, Secretary Noem acted at the direction of the President and implemented his executive order when she terminated the protective status designation for Haiti. Accordingly, the district court lacked jurisdiction to review her actions under the APA.

## II. This Court should harmonize the TPS statute with the President's inherent constitutional authority

A reviewing court should seek to harmonize Congress's enactments with the President's inherent constitutional authority to terminate TPS designations. *See United States v. Hansen*, 599 U.S. 762, 781 (2023) ("When legislation and the Constitution brush up against each other, our task is to seek harmony, not to manufacture conflict."). "When 'a serious doubt' is raised about the constitutionality of an Act of Congress, 'it is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided.'" *Jennings v. Rodriguez*, 583 U.S. 281, 296 (2018) (quoting *Crowell v. Benson*, 285 U. S. 22, 62 (1932)).

Of course, the "canon of constitutional avoidance comes into play only when, after the application of ordinary textual analysis, the statute is found to be susceptible of more than one construction." *Id.* (internal quotation omitted). Here, there is no tension between the TPS statute and the unreviewability of presidential actions. As the government has persuasively established, the TPS statute precludes judicial review of Secretary Noem's decision to termination TPS for Haiti. *See*

Government's Stay Motion at 10-17. Thus, whether viewed as an exercise of the President's inherent constitutional authority to protect the nation from foreign threats or an exercise of a delegated power under the TPS statute, courts are precluded from second-guessing the Secretary's TPS determinations.

Because the Secretary Noem's termination of Haiti's TPS status is unreviewable both as an exercise of inherent presidential authority and under the TPS statute, the district court clearly erred in concluding that the APA permitted such review.

## CONCLUSION

For the reasons stated herein, the Court should reverse the district court's order granting a stay of Secretary Noem's TPS termination determination.

DATED: February 11, 2026  Respectfully submitted,


<u>/s/ Christopher J Hajec</u>
Christopher J. Hajec
Matt A. Crapo
Federation for American Immigration Reform
25 Massachusetts Ave., NW, Suite 330
Washington, DC 20001
Telephone: (202) 387-3447

Attorneys for *Amicus Curiae*
Federation for American Immigration Reform

**CERTIFICATE OF COMPLIANCE**

1.      The foregoing brief complies with the type-volume limitation of FED. FED. R. APP. P. 29(a)(5) because this brief contains 1,824 words, including footnotes, but excluding the parts of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Times New Roman 14-point font.

/s/ Christopher J Hajec

# CERTIFICATE OF SERVICE

I certify that on February 11, 2026, I electronically filed the foregoing brief with the Clerk of the Court using the CM/ECF system, which I understand to have caused service of the parties' counsel.

/s/ Christopher J. Hajec